In re BENTON GRAPHICS

v.

UDDEHOLM CORP., et al.

Civ. A. No. 86–0421(CSF).

United States District Court,
D. New Jersey.

Nov. 30, 1987.

Bruce W. Clark, Dechert Price & Rhoads, Princeton, N.J., for plaintiff Benton Graphics.

Charles Quinn, Pitney, Hardin, Kipp & Szuch, Morristown, N.J., Randall J. Sunshine, Shearman & Sterling, New York City, for defendant Uddeholm Corp.

## OPINION

FREDA L. WOLFSON, United States Magistrate.

This litigation involves allegations of fraud and breach of contract against several defendants, including two Swedish Companies, Uddeholms, A.B. and Uddeholm Strip Steel, A.B. The plaintiff, Benton Graphics, Inc., originally brought the instant motion on for an order compelling responses to interrogatories and the production of documents. The defendants opposed this motion claiming that the principles of comity required that discovery must first be sought under the applicable Hague Convention procedures. Because the United States Supreme Court was then considering the interplay of the Federal Rules of Civil Procedure and the Hague Convention in *Societe Nationale Industrielle Aerospatiale v. U.S. District Court*, —— U.S. ——, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987), I stayed my decision until that case was decided. *Aerospatiale* was decided on June 15, 1987 and I subsequently asked the parties to submit papers regarding the most expeditious and fair manner of proceeding with discovery in light of the Court's decision. Supplemental briefs have been received and the motion is now properly before this court for resolution.

In *Aerospatiale*, the Supreme Court rejected the position that a party would first be required to utilize Hague Convention procedures whenever discovery is sought of a foreign litigant. However, the Court also rejected the position that the Convention is never applicable when discovery is sought abroad. Rather, the court adopted an intermediate case-by-case approach.

The Court found that "the text of the Evidence Convention as well as the history of the proposal and ratification by the United States unambiguously supports the conclusion that it was intended to establish optional procedures that would facilitate the taking of evidence abroad." *Aerospatiale*, —— U.S. at ——, 107 S.Ct. at 2553, 96 L.Ed.2d at 480. According to the Court, these optional procedures did not deprive a district court of the jurisdiction it otherwise possessed to order a party to produce evi-

dence located in a signatory country. *Id.* at ——, 107 S.Ct. at 2553, 96 L.Ed.2d at 481. However, the Court did find that "the Hague Convention does 'apply' to the production of evidence in a litigant's possession in the sense that it is one method of seeking evidence that a court may elect to employ". *Id.* at ——, 107 S.Ct. at 2554, 96 L.Ed.2d at 482. Nonetheless, the court declined to find that comity requires resort to Hague Evidence Convention Procedures "without prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." *Id.* at ——, 107 S.Ct. at 2556, 96 L.Ed.2d at 484.

While stating that resort to convention procedures was only optional the Court observed that "some discovery procedures are much more intrusive than others". *Id.* at ——, 107 S.Ct. at 2556, 96 L.Ed.2d at 484–85. Therefore, district courts must take special care to ensure that foreign litigants are not subject to unnecessary or unduly burdensome discovery. Due respect must be accorded special problems encountered by a foreign litigant because of its nationality, location, or any sovereign interest expressed by a foreign state. *Id.* at ——, 107 S.Ct. at 2556–57, 96 L.Ed.2d at 485.

However, while emphasizing that careful consideration must be given to a foreign litigant's claim of abusive discovery the Court held that, "[e]ven if a court might be persuaded that a particular document request was too burdensome or too 'intrusive' to be granted in full, with or without an appropriate protective order, it might well refuse to insist upon the use of Convention procedures before requiring responses to simple interrogatories or requests for admissions. The exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke." *Id.* at ——, 107 S.Ct. at 2556, 96 L.Ed.2d at 485.

■ In sum, the Hague Convention is an optional procedure that may be utilized by a district court after considering 1) the particular facts of the case, 2) the sovereign interests involved and 3) the likelihood that resort to the Convention would be an effective discovery device. Whether a particular document request is too burdensome is left to the sound discretion of the trial court in light of the facts of the case, and the respective interests of the parties and foreign governments involved.

In the instant motion, a major dispute is whether either party carries the burden in determining whether the Federal Rules or Convention procedures should be followed. The plaintiff claims that the Supreme Court's analysis in *Aerospatiale* strongly suggests that the party seeking to supplant the Federal Rules with the Convention must demonstrate its reasons. Plaintiff relies on the Court's rejection of the position that the Hague Convention never applies to foreign litigants over which the court has jurisdiction because "such a rule would deny the foreign litigant a full and fair opportunity to demonstrate appropriate reasons for employing the Convention procedures in the first instance." *Id.* at ——, 107 S.Ct. at 2557, 96 L.Ed.2d at 486. Thus, the plaintiff argues that parties seeking to invoke the Convention are required "to demonstrate appropriate reasons for employing the Convention" in lieu of the federal rules.

On the other hand, the defendants contend that the burden rests with the party who seeks to avoid using Convention procedures. Specifically, defendants argue that a party seeking discovery outside the Convention should be required to show by clear and convincing evidence that the Convention's procedures would be inefficient or unnecessarily burdensome. Anything less, according to the defendants, would derogate from the United States' obligations under the Convention and violate the judicial sovereignty of Sweden. Essentially, the defendants would like to adopt the position of the four justices who filed an opinion dissenting in part and concurring in part.

■ While the majority opinion is not crystal clear on the issue of who bears the

burden of establishing which discovery procedure to utilize, I agree with the plaintiff that the party seeking to utilize Convention procedures must demonstrate appropriate reasons.[1] *Id.* at ——, 107 S.Ct. at 2557, 96 L.Ed.2d at 486. *But see, Hudson v. Hermann Pfauter GmbH & Co.*, 117 F.R.D. 33 (N.D.N.Y.1987).[2] This is consistent with the policy expressed by the Court in *Aerospatiale* that foreign competitors voluntarily marketing their product in the United States should be subject to the same judicial burdens as their domestic counterparts. *Id.* at —— n. 25, 407 S.Ct. at 2553 n. 25, at 481 n. 25. If foreign litigants seek resort to the Convention, fairness requires that they have the burden of proof. Therefore, foreign litigants attempting to supplant the federal rules with Convention procedures must demonstrate why the particular facts and sovereign interests support using the Convention. They must also demonstrate that resort to these procedures will prove effective.

To undertake a review of whether the Convention should apply to this case, it is appropriate to start with a review of the facts of the case beginning with the parties.[3] Plaintiff, Benton Graphics, Inc., is a New Jersey corporation in the business of manufacturing and distributing doctor blades for use in the gravure printing industry. Defendant, Uddeholm Strip Steel, A.B. is a Swedish Corporation which manufactures and distributes steel products, including carbon steel for use in manufacturing doctor blades. Until 1981, Uddeholm Strip Steel was a division of defendant Uddeholms, A.B. and not separately incorporated. Defendant Uddeholm Corporation, U.S.A. imports and distributes in the United States steel and steel products manufactured by Uddeholm Strip Steel, A.B. Defendant Thomas Knudsen is the former vice-president of Uddeholm Corporation, U.S.A.

Between 1979 and 1985, Benton Graphics entered into a series of contracts with defendants to purchase doctor blades. Prior to 1980, defendants manufactured and sold doctor blades under the designation UHB–20R steel. After 1980, defendants manufactured and sold to Benton a different grade carbon steel under the designation UHB–18–CR. Benton claims that defendant Knudsen represented on numerous occasions that the steel delivered to Benton since 1980 was UHB–20R.

In February 1986, Benton brought this action against defendants alleging breach of contract, breach of warranty, fraud and RICO violations based on the theory that defendants conspired to misrepresent the grade of steel sold to Benton between 1980 and 1985. Benton claims that there is a material difference between UHB 20R and UHB 18CR steel and that defendants intentionally withheld this information from

---

**1.** The minority opinion implicitly recognized that this was the type of burden the majority was placing on litigants—the Convention is merely an optional procedure—and thus forms part of the reason for the partial dissent.

**2.** In *Hudson,* the court found that the burden should be placed on the party opposing the use of Convention procedures to demonstrate that those procedures would be ineffective. In reaching this decision the district court relied upon Justice Blackmun's concurring and dissenting opinion in *Aerospatiale.* Justice Blackmun held that a court "should perform a tripartite analysis that considers the foreign interests, the interests of the United States, and the mutual interests of all nations in a smoothly functioning international legal regime", —— U.S. at ——, 107 S.Ct. at 2562, 96 L.Ed.2d at 491 (Blackmun J., concurring in part and dissenting in part) when determining whether the Convention should be utilized in the first instance. In

agreeing with Justice Blackmun, the court, in *Hudson* also noted that international policy considerations transcend the interests of the individual litigants. I disagree with the *Hudson* court's analysis because it relies too heavily on the concurring and dissenting opinion of Justice Blackmun in *Aerospatiale.* While Justice Blackmun's opinion certainly is thoughtful and well reasoned, it is not the opinion of the majority of the members on the Supreme Court. In *Aerospatiale,* the majority did not elevate theoretical policy concerns over the effect Convention procedures would have upon particular litigants. Rather, the Court specifically directed district courts to analyze the interests of the parties and the intrusiveness of the discovery sought. *Aerospatiale,* —— U.S. at ——, 107 S.Ct. at 2556, 96 L.Ed.2d at 485.

**3.** This motion only involves Swedish defendants Uddeholsm, A.B. and Uddeholm, Strip Steel, A.B.

Benton. Defendants deny these allegations.

In the instant motion, defendants have made no attempt to relate the "particular facts" of this case to the discovery sought. Defendants only argue that the interrogatories and requests for documents are overbroad and burdensome. I note that the defendants have not identified the *specific* interrogatories or document requests that are overbroad or burdensome. They have not alleged that the discovery is unduly expensive or that the discovery is being sought for the "improper purpose of motivating settlement rather than finding relevant and probative evidence". *Id.* at ——, 107 S.Ct. at 2557, 96 L.Ed.2d at 485. Moreover, defendants have failed to allege any special problems because of their nationality or the location of their operations. *Id.*

Because defendants have largely failed to specifically identify their objections [4] it is impossible for me to determine which, if any, requests are overbroad and burdensome. However, having reviewed the interrogatories, I believe that a number of the requests are not "simple" and may require streamlining if we are to proceed under the federal rules. For example, a number of questions seek information held by "any employee of Uddeholm Strip Steel"; these appear too encompassing. I believe these questions can be limited to a defined group of individuals from Uddeholm who were involved in the manufacture of and the decision to sell UHR–18–CR grade steel in place of UHB–20R steel products. It is this that is important and not whether *any* employee had certain knowledge which may never have been communicated to any of the persons in control until the commencement of this litigation. Furthermore, these questions, as phrased, include even clerical employees. Identification of such persons, while being of little or no moment, would, however,

involve substantial investigation by the foreign litigants. This type of expansive discovery without concomitant relevance is not what the Court envisioned when it handed down the *Aerospatiale* decision:

> Some discovery procedures are much more "intrusive" than others. In this case, for example, an interrogatory asking petitioners to identify the pilots who flew flight tests in the Rallye before it was certified for flight by the Federal Aviation Administration, or a request to admit that petitioners authorized certain advertising in a particular magazine, is certainly less intrusive than a request to produce all of the "design specifications, line drawings and engineering plans and all engineering change orders and plans and all drawings concerning the leading edge slats for the Rallye type aircraft manufactured by the Defendants."

*Aerospatiale,* —— U.S. at ——, 107 S.Ct. at 2556, 96 L.Ed.2d at 484–85.

Thus, the parties shall have 10 days to confer in an effort to limit and resolve the scope of the discovery requests to ensure that they are reasonable and not overly burdensome, keeping in mind that discovery requests that are too "intrusive" may be limited by this court. After making such good faith effort to reach accommodation, I will permit the defendants to address any specific objections to interrogatories or document requests within ten days thereafter.[5] Defendants are cautioned that they must explain *why* specific discovery sought is overbroad or burdensome. Plaintiff will be entitled to respond to any potential objections within ten days after defendants' objections are filed with this court.

■ Notwithstanding defendants' blanket objections to all discovery, I do not find that the "particular facts" of this case re-

---

**4.** Defendants have only framed a specific objection to plaintiff's request for "all documents referring or relating in any way" to the steel heat tests as an example of why it believes *all* discovery sought is overbroad and burdensome.

**5.** Whether a particular document request or interrogatory is overbroad or burdensome is left

to the discretion of the trial court. A decision that a discovery request is overbroad and burdensome does not necessitate the use of Convention procedures for other valid interrogatories or document requests. *Id.* at ——, 107 S.Ct. at 2557, 96 L.Ed.2d at 485.

quire resort to Convention procedures. The discovery sought in this case largely relates to the composition, qualities, and testing of defendants' steel. Several of the defendants and all relevant tests are located in Sweden. This is conceded by defendants. It is essential that plaintiff and its experts have access to the tests if this litigation is to proceed in any semblence of a timely fashion. The foreign defendants have identified no special problem with responding to the requested discovery because of their nationality. Since discovery of these tests and other relevant information can be accomplished efficiently under the federal rules the "particular facts" of this case do not necessitate resort to the Convention.

The second factor which must be analyzed before ordering use of the Convention is the sovereign interest involved. Defendants argue that "critical sovereign interests of Sweden" support utlizing Convention procedures. (Defendants' Supplemental Brief at 15). They have submitted the duly authenticated Declaration of Wanja Tomberg, Assistant Under–Secretary of the Swedish Ministry for Foreign Affairs, dated September 7, 1987 (the "Tornberg Declaration"). According to Tornberg, use of the Hague Convention serves a number of important Swedish interests including:

(a) It serves as an essential link and an effective mechanism for cooperation between different legal systems.

(b) It minimizes conflicts between the legal requirements of different states.

(c) It satisfies the urging of the United States for Sweden and other civil law nations to provide a means for complying with requests for pretrial discovery of documentary evidence in a manner which is consistent with the laws of Sweden.

(d) It discourages "fishing expedition" methods of obtaining unspecified evidence, which are regarded as unacceptable in Sweden and in other civil law nations.

(e) It effectively balances the divergent interests promoted by the United States' and Sweden's conflicting rules on who bears the costs associated with compliance. The rule in Sweden, as in most civil law countries, is that the losing party reimburses the winner for litigation expenses. Unlike the general rule in the United States, the Swedish rule forces plaintiffs to evaluate carefully the merits of a case before bringing it.

(f) It enables Swedish courts to limit discovery in sensitive and protected areas under Swedish law such as trade secrets and national security.

These "critical sovereign interests" are merely general reasons why Sweden prefers civil law discovery procedures to the more liberal discovery permitted under federal rules. Defendants cite no reasons how the *specific* discovery sought by Benton implicates any *specific* sovereign interest of Sweden. Defendant claims that the Swedish government may have the right to protect some of the information requested. However, defendant does not explain which discovery is objectionable nor why it might have to be protected. No allegations are made that trade secrets are involved or that Benton is engaged in a "fishing expedition". In short, because defendant has not explained, and I do not see why Benton's discovery requests in their entirety or any particular request, violate any special sovereign interests of Sweden, resort to the Hague Convention is not required.

Lastly, I must consider whether Convention procedures in *this* case will prove effective. Here, I find that they will not. The Tornberg declaration states that the defendants' letter of request should be processed by the Swedish authorities in approximately two months. That is an approximation based upon past history; there are certainly no guarantees. This case has already endured numerous delays and discovery should proceed apace. Another delay while the Swedish authorities determine what discovery will be permitted and the further litigation undoubtedly spawned by their decision may bring actual discovery to a standstill. Therefore, in light of the lengthy history of discovery in this case and the potential for additional delays, I do not find that Convention procedures will prove effective.

In conclusion, plaintiff's motion compelling responses to interrogatories and the production of documents in accordance with the Federal Rules of Civil Procedure is granted. Defendants shall have the opportunity to object to any *specific* interrogatories or document request within ten days thereafter. Plaintiff may respond to any potential objection within ten days after defendants' objections are filed with this Court.