**In re PERRIER BOTTLED WATER LITIGATION.**

**MDL No. 844 (TFGD).**

United States District Court,
D. Connecticut.

July 11, 1991.

Court. *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).

III, Greenfield & Chimicles, Haverford, Pa., Dianne M. Nast, Kohn, Savett, Klein & Graf, P.C., David Berger, Berger & Montague, P.C., Philip P. Kalodner, Gerald J. Rodos, Barrack, Rodos & Bacine, Philadelphia, Pa., William E. Haggerty, Morgan, Hallgren, Crosswell & Kane, P.C., Lancaster, Pa., Phyllis C. Kaufman, Warren Rubin, Gross & Metzger, P.C., Philadelphia, Pa., Harvey Greenfield, Law Firm of Harvey Greenfield, New York City., Richard A. Fuchs, Koskoff, Koskoff & Bieder, P.C., Bridgeport, Conn., Gerald D.W. North, North & Barron, Phoenix, Ariz., Howard Z. Rosen, Posner & Rosen, Margot A. Metzner, Hufstedler, Kaus & Beardsley, Albert Cary Plotkins, Graiwer & Goldbert, Inc., Los Angeles, Cal., David B. Zabel, Cohen and Wolf, P.C., Bridgeport, Conn., for plaintiffs.

Douglas E. Lee, pro se.

James J. Hagan, Jay S. Handlin, Robert A. Bourque, John J. Kenney, Simpson Thacher & Bartlett, New York City, for defendants.

### CONSOLIDATED RULING ON DISCOVERY MOTIONS

DALY, District Judge.

The background to these lawsuits is set forth in the Court's November 9, 1990 Ruling on defendants' motion to dismiss, 754 F.Supp. 264. To summarize, these suits were initiated following the February 14, 1990 public announcement that quantities of benzene, a possible carcinogen, had been identified in Perrier Water. Plaintiffs have asserted claims for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, and for breach of warranty under sections 2–313 and 2–314 of the Uniform Commercial Code ("U.C.C."), in addition to others. After various complaints were lodged in several districts across the country, the Judicial Panel on Multidistrict Litigation ordered many of these cases to be transferred to and consolidated for pretrial purposes in this District. *See* Order of Panel (June 13, 1990). Defendants in these actions include, *inter alia,* Perrier Group of

Michael J. Pucillo, Greenfield & Chimicles, West Palm Beach, Fla., C. Oliver Burt,

America, Inc. ("Perrier Group"), Great Waters of France, Inc. ("Great Waters"), and Source Perrier, S.A. ("Source Perrier"), a French corporation.

Claiming that defendants have failed to answer interrogatories or respond to requests for production adequately, or, in some cases, at all, plaintiffs have filed a motion to compel. Defendants oppose this motion. Furthermore, defendant Source Perrier has filed a motion for a protective order directing that any discovery requested of it proceed pursuant to the provisions of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 ("Hague Evidence Convention", or "the Convention"). Plaintiffs oppose this request, and argue for the application of the discovery procedures set forth in the Federal Rules of Civil Procedure. The Court shall resolve all of these pending issues in this consolidated Ruling.

### (1) Motion to Compel

#### (a) Interrogatories

■ The Court notes that plaintiffs have violated both the letter and the spirit of Local Rule of Civil Procedure 9(d)(1), as well as the Court's Order of January 29, 1991. The Local Rule provides, in pertinent part, "[u]nless otherwise permitted by the Court for good cause shown, such permission being granted only upon written motion to the Court, no party shall serve upon any other party, in any civil action, more than thirty (30) written interrogatories, *including all parts and sub-parts.*" (emphasis supplied). On January 29, 1991, upon plaintiffs' request, the Court granted plaintiffs leave to file 60 interrogatories.

Despite the clear directive of the Local Rule, plaintiffs' discovery request goes far beyond the Court's modification. Although plaintiffs' discovery request only purports to include 23 interrogatories, they number, by any reasonable reading, at least 100 requests, counting both parts and subparts.

Plaintiffs' first interrogatory alone contains 18 distinguishable parts.[1]

Although defendants Great Waters and Perrier Group have answered, in some fashion, almost all of the interrogatories propounded by plaintiffs, they were under no obligation to do so, as the request exceeded the scope of discovery permitted by the Court. The Court observes that, in an analogous situation, if a party seeks discovery beyond the time period set by the Court, although the adverse party may well choose to respond, either completely or in part, the requesting party cannot successfully enlist the Court's aid if it believes the responses are inadequate. Similarly, here, since the plaintiffs have exceeded substantially the limit on interrogatories set by the Court—and since the Court cannot determine which sixty questions plaintiffs would choose to have answered—the Court shall not compound the disobedience of its own Order by requiring defendants to respond more fully to what plaintiffs were not entitled to ask. Accordingly, even if the Court were to determine that defendants answers were unresponsive or insufficient, plaintiffs would not be entitled to the relief sought. Thus, plaintiffs' motion to compel as regards their interrogatories is DENIED.

#### (b) Requests For Production

■ To the extent that defendants resist producing the material sought by plaintiffs, they rely primarily upon various "general" objections. Resolution of certain of these general objections, therefore, addresses the bulk of plaintiffs' concerns. Where defendants have addressed a request with particularity, and beyond the scope of their general objections, the Court shall likewise review their contentions.

First, defendants Perrier Group and Great Waters contend that they are not required to produce Source Perrier's documents. As Source Perrier is also a defendant in this action, the Court fails to see a

---

**1.** Plaintiffs' second request contains 4, third=15, fourth=1, fifth=1, sixth=1, seventh=6, eighth=2, eleventh=1, twelfth=2, thirteenth=5, fourteenth=5, fifteenth=1, six- teenth=17, eighteenth=6, nineteenth=5, twentieth=1, twenty-first=1, twenty-second=1, and twenty-third=1.

legitimate reason why these defendants should be required to produce documents under a co-defendant's control. Although the manner in which such discovery may be obtained is the subject of defendant's motion for a protective order, the availability of such discovery has not been challenged yet. Accordingly, the Court need not address whether Source Perrier's American affiliates must produce the requested material, and plaintiffs' motion to compel in this regard is DENIED on the current record.

■ Second, plaintiffs' general instructions to defendants concerning the information sought by the interrogatories and requests for production includes: "[u]nless otherwise specified, each interrogatory herein requests information from January 1, 1985 to and including the date of these interrogatories, or referring or relating to such period." Defendants have not produced substantial documents created prior to 1989, or, in certain areas, 1990, contending that such information is irrelevant and compliance would be unnecessarily burdensome.

In certain types of cases, past instances of conduct may well be relevant in assessing the lawfulness of subsequent activity. *See, e.g., Zahorik v. Cornell Univ.*, 98 F.R.D. 27, 31 (N.D.N.Y.1983). Courts must be ever vigilant, however, to prohibit parties from conducting general "fishing expeditions" into areas unrelated to the claims in issue. *Id.* Moreover, the Federal Rules discovery procedures must not be utilized simply to increase the costs of defending or prosecuting a lawsuit in the hopes of forcing a settlement.

Here, however, a fair reading of these complaints reveals that, among other things, plaintiffs claim defendants engaged in a pattern of racketeering and fraud from 1986. In addition, plaintiffs allege that the recall which spurred these suits was preceded by a recall in 1986. As defendants' own citation indicates, "proper discovery should only extend as far back as the beginning of events underlying the complaint." Defs' mem. at 15 (citing *Zahorik*, 98 F.R.D. at 32). By attempting to limit plaintiffs' claims to the events surrounding

the 1990 recall, defendants misread the complaint. Since plaintiffs have averred a pattern of activity beginning in 1986, and since events surrounding and subsequent to the prior recall may well lead to relevant information, plaintiffs are entitled to material from that year, provided it is otherwise relevant and non-privileged. As information from the previous year may well be relevant to subsequent events, and since requiring information from one additional year would not be overly burdensome, in the Court's view, defendants' objection to requests for material from 1985 to the present is OVERRULED, and plaintiffs' motion is GRANTED. Accordingly, defendants are hereby ORDERED to produce the requested material from January 1, 1985 to the present, except where indicated below.

■ Third, the Court is troubled by defendants' discussion of its assertion that various materials and information are "privileged" and hence not discoverable. Defendants contend that "plaintiffs' counsel were informed during discovery conferences [that] [ ] these valid objections did not result in the withholding of anything but legitimately privileged information and documents. Plaintiffs have also been informed that an index of privileged documents is forthcoming." Defs' mem. at 21. Defendants further set forth that "[l]itigation on privilege issues is simply premature at this time." *Id.* This is the substance of defendants' response to plaintiffs' request for an order compelling the production of material defendants have claimed to be privileged.

■ While defendants are, of course, entitled to resist discovery of material which they believe reasonably to be privileged, where such an assertion is challenged, as here, it is for the Court, not the defendants, to determine the merits of defendants' objection. Moreover, where a privilege is asserted and then challenged, the burden rests upon the party so claiming to establish that the material is, in fact, not discoverable. *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 305 (S.D.N.Y.1982). A party asserting that in-

formation is not discoverable by virtue of the attorney-client privilege must supply the Court with:

> sufficient information from which it could reasonably conclude that the communication: (1) concerned the seeking of legal advice; (2) was between a client and an attorney acting in his professional capacity; (3) was related to legal matters; and, (4) is at the client's instance permanently protected. *Federal Trade Commission v. Shaffner*, 626 F.2d 32, 37 (7th Cir.1980).

*In re Shopping Carts Litigation*, 95 F.R.D. at 305–06. Similarly, a party seeking to invoke Federal Rule 26(b)(3)'s protection of materials prepared in anticipation of litigation must establish, as an initial matter, that the sought-after documents were, in fact, prepared in anticipation of litigation. *Linder v. Sellinger*, Civ. No. B–90–409 (TFGD), slip op. at 2 (D.Conn. July 3, 1991) (Consolidated Ruling On Discovery Motions). Defendants have failed to provide any such information. Accordingly, in responding simply that they find the issues premature for resolution, defendants have failed to sustain their burden, and their assertions of privilege are OVERRULED.

■ Defendants have also interposed certain additional objections in their memorandum in opposition to plaintiffs' motion.[2] Plaintiffs' request 3(f) calls for, in part, "[a]ll documents which refer to, relate to, or contain information concerning ... contacts or communications with defendants concerning: (i) sales, delivery ... [of] Perrier ... and (ii) visits to ... conditions at, description of, reports on, or issues relating to the Vergeze spring, the Vergeze plant and its operations, Perrier or any gases used in the production of Perrier". Plaintiffs' request 3(i) calls for "[a]ll documents which refer to, relate to, or contain information concerning ... sales of Perrier manufactured, bottled or possessed at the Vergeze plant, to any division, subsidiary, parent, or affiliate of defendants (doc-uments called for include, but are not limited to, contracts and accounting records and invoices showing volume and date sold.)."

Defendants contend that they have complied in part with these requests but resist producing information concerning "the volumes of sales-related minutiae". Defendants claim such material is irrelevant, and production would be overly burdensome. The Court agrees in full, and to the extent plaintiffs seek such sales information, plaintiffs' motion is DENIED.

The remaining bases for objection discussed in defendants' memorandum have already been addressed by the Court's discussion of defendants' general objections.

### (2) Motion For A Protective Order

■ Defendant Source Perrier seeks a Court Order requiring plaintiffs to utilize the procedures established by the Hague Evidence Convention in seeking discovery of information and material in Source Perrier's possession or control.

Unlike the United States, where the Federal Rules provide private parties with broad powers to conduct their own pretrial discovery, civil-law countries, such as France, of which Source Perrier is a resident, view the evidence gathering process as an exercise of judicial sovereignty to be entrusted entirely to the courts. R. Schlesinger, *Comparative Law* 387–89 (4th ed. 1980). Several civil-law countries have publicly expressed their disfavor of foreign citizens gathering evidence within their territory without sending requests through the judicial branches of their governments. *See* Oxman, *The Choice Between Direct Discovery and Other Means of Obtaining Evidence Abroad: The Impact of the Hague Evidence Convention*, 37 U.MIAMI L.REV. 764 n. 84 (1983) (citing *Responses des Gouvernements au Questionnaire sur la Reception des Depositions a l'Etranger*, 4 *Conference de la Haye de Droit International Prive: Actes et Documents de la Onzieme Session* 21, 44 (1970)).[3] In

---

**2.** To the extent that defendants have not discussed particular objections in their opposition to plaintiffs' motion, the Court deems these objections abandoned.

**3.** Nine governments so responded to this questionnaire, including: Egypt, France, West Germany, Italy, Luxemburg, Norway, Switzerland, and Turkey. The French response was that

an attempt to establish procedures for obtaining evidence located abroad that a state executing a request would find "tolerable", and which the state from which a request came would find "utilizable", *Societe*, 482 U.S. at 530, 107 S.Ct. at 2549 (1987) (citation omitted), seventeen nations, including the United States, joined the Hague Evidence Convention. *Id.* at 524 n. 1, 107 S.Ct. at 2545 n. 1.[4]

The Convention establishes three procedures through which parties to a litigation in one country may obtain evidence located in another country. The first is a "letter of request" from the trial court to the appropriate authority in the foreign country, requesting a foreign court "to obtain evidence, or to perform a requested act." Convention, Arts. 1–14, 23 U.S.T. 2555, 2557–64. Under the second procedure, a diplomatic officer or consular agent of the requesting country gathers the evidence in the foreign country for use in the litigation. *Id.* at Arts. 15, 16, 23 U.S.T. at 2564–65, 2566–68. Lawyers may only use this second procedure if "a competent authority designated by the [s]tate in which he exercises his functions has given its permission either generally or in the particular case, and he complies with the conditions which the competent authority has specified in the permission." *Id.* at Art. 16(a), (b). The third procedure permits a court of the foreign state where the parties seek the evidence to appoint a commissioner to gather such evidence. *Id.* at Arts. 17–22, 23 U.S.T. at 2565–68. The trial court may make such an appointment with the consent of the appropriate foreign authorities. *Id.*

In *Societe*, the Supreme Court analyzed the interaction of the discovery procedures set forth in the Federal Rules and the Convention, noting that both are the law of the United States. 482 U.S. at 533, 107 S.Ct. at 2550. After review of the language of the Convention, and its history, the Court rejected the notion that the Convention requires the use of its procedures to the exclusion of the Federal Rules procedures whenever evidence located abroad is sought for use in an American court. *Id.* at 533, 107 S.Ct. at 2550. The Court further rejected the suggestion that American courts should adopt a rule of "first resort" to the procedures of the Convention. *Id.* at 542, 107 S.Ct. at 2554.

Ultimately, the Court concluded that the Convention established optional procedures to facilitate the taking of evidence abroad. *Id.* at 538, 107 S.Ct. at 25. In making a determination whether to require use of the Convention procedures, or to permit discovery pursuant to the Federal Rules, the Supreme Court instructed that courts must consider the particular facts of each case, the sovereign interests at issue, and the likelihood that resort to Convention procedures will prove effective. *Id.* at 544, 107 S.Ct. at 2555. Leaving the determination to be made on a case-by-case basis by the trial court, the Supreme Court advised that American courts "should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Id.* at 546, 107 S.Ct. at 2557.

For the most part, lower court decisions since *Societe* have followed the analytical

"[t]he French conception of sovereignty and 'orde public' implies that, on French territory, the collection of evidence may not be undertaken by an agency other than a [French] court or magistrate appointed by that court." *Id.*

France has even enacted a penal law proscribing private parties from gathering evidence for litigation abroad. Article 1A of the French "blocking statute," French Penal Code No. 80–538, provides: "[s]ubject to treaties or international agreements and applicable laws and regulations, it is prohibited for any party to request, seek or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to

the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith." *Societe Nat. Indus. Aero. v. United States District Court*, 482 U.S. 522, 526 n. 6, 107 S.Ct. 2542, 2546 n. 6, 96 L.Ed.2d 461 (1987).

4. The Hague Convention entered into force between the United States and France on October 6, 1974. *Id.* The Convention is also in force in Barbados, Cyprus, Czechoslovakia, Denmark, Finland, Germany, Israel, Italy, Luxembourg, the Netherlands, Norway, Portugal, Singapore, Sweden, and the United Kingdom. *Id.*

framework just described, though they have not generally concluded that the procedures set forth by the Convention should be utilized. *See, e.g., Haynes v. Kleinwefers,* 119 F.R.D. 335 (E.D.N.Y.1988); and *Benton Graphics v. Uddeholm Corp.,* 118 F.R.D. 386 (D.N.J.1987). One Court which found use of the Convention procedures appropriate, however, was the Northern District of New York, in *Hudson v. Hermann Pfauter GmbH & Co.,* 117 F.R.D. 33 (N.D.N.Y.1987). In that case, Judge Munson found that, on the facts of that particular case, under either the approach taken by Justice Blackmun in his concurring and dissenting opinion in *Societe,* which Judge Munson preferred,[5] or under the *Societe* majority's analysis, the Convention's procedures should be utilized in the first instance by those litigants. *Id.*[6]

■■■ Although this Court concurs with the sentiments expressed in Judge Munson's *dicta* concerning his preference for Justice Blackmun's approach, *see id.* at 37, the majority opinion in *Societe* was unambiguous as to how lower courts are to analyze whether to require use of the Convention procedures. *Societe,* 482 U.S. at 544–46, 107 S.Ct. at 2555–57. Thus, whether these plaintiffs must utilize the Convention procedures to obtain the discovery they seek is a function of a three-pronged inquiry, including (1) examination of the particular facts of the case, particularly with regard to the nature of the discovery requested; (2) the sovereign interests in issue; and (3) the likelihood that the Convention procedures will prove effective. *See id.; Benton,* 118 F.R.D. at 390. The Court concurs with the *Benton* Court that a party who seeks the application of Convention procedures rather than the Federal Rules bears the burden of persuading the trial court. *Id.* at 389.

On the first prong of this examination, as implicitly suggested in the earlier portions of this Ruling, the Court views plaintiffs' second set of interrogatories as beyond the scope of what the Court permitted in its Order of January 29, 1991, and excessive. Although plaintiffs have submitted a replacement set of interrogatories to be answered by Source Perrier that are far fewer in number, the Court concurs in defendants' assessment that certain of these interrogatories could also be characterized as abusive. For example, the first interrogatory requests Source Perrier to identify each person who investigated the manufacture of Perrier water. Plaintiffs instruct that "investigate" means

> to observe, study closely, inquire into systematically, examine, scrutinize, inquire into officially or unofficially, routinely, sporadically, or on a one time basis....

Plaintiffs further instruct that "manufacture of Perrier" refers

> to all endeavors, physical and mental, related to the operations that result in the finished bottled product Perrier Water....

Especially when the size of Source Perrier is considered, it is obvious that plaintiffs' request seeks an extraordinary volume of information, much of it irrelevant to the cases at hand. Similarly, interrogatory #10 requests Source Perrier to identify, among other things, all persons responsible for administering document retention policies concerning the manufacture of Perrier Water. The term "document", as described in the instructions, means virtually any piece of paper or print-out containing data. Requiring Source Perrier to identify any person who possesses documents relating to the manufacture of Perrier Water is a request for information that goes far

---

**5.** Justice Blackmun wrote that he would require a general presumption that courts should first resort to the Convention procedures. *Societe,* 482 U.S. at 548–49, 107 S.Ct. at 2558–59 (Blackmun, J., concurring in part). To reach this conclusion, he performed a tripartite analysis which included examination of foreign nations' interests, the interests of the United States, and the mutual interests of all nations in a smoothly functioning international legal regime. *Id.* at

555, 107 S.Ct. at 2561. Justice Blackmun eschewed the notion that this analysis should be done on a case-by-case basis. *Id.*

**6.** Contrary to plaintiffs' assertion, Magistrate Amon, writing in the *Haynes* case, did not criticize, reject, or declare the *Hudson* case "wrongly decided." *See Haynes,* 119 F.R.D. at 338.

beyond what might be relevant in this lawsuit, or what is reasonably calculated to lead to relevant material.

Plaintiffs' memorandum also makes clear that its document requests have not been replaced, but are equally applicable to Source Perrier. Certain of these requests call for an incredible quantity of information. For example, request # 5 of the first set calls for all advertising copy and all documents referring to advertising campaigns for Perrier in the United States.

In sum, plaintiffs' discovery requests are not narrowly tailored inquiries designed solely to target discreet and material information. Rather, although many of the requests seek discoverable information, they call for extremely broad responses from Source Perrier, much of which is likely to be immaterial, and intrusive.

Turning to the second prong of the analysis, the sovereign interests in issue, plaintiffs suggest that since Source Perrier is a privately-owned corporation, the French government has no particular interest in the outcome of the litigation. Plaintiffs, however, have missed the point of the Hague Evidence Convention. In this context, a foreign state's sovereign interests are implicated, if at all, in seeking discovery from citizens of the foreign state, within the boundaries of that state, without the permission of that state. Justice Blackmun explained that

> [t]he act of taking evidence in a common-law country from a willing witness, without compulsion and without a breach of the peace, in aid of a foreign proceeding, is a purely private matter, in which the host country has no interest and in which its judicial authorities have normally no wish to participate. To the contrary, the same act in a civil-law country may be a public matter, and may constitute the performance of a public judicial act by an unauthorized foreign person. It may violate the 'judicial sovereignty' of the host country, unless its authorities participate or give their consent. 8 *Int'l Legal Materials* 785, 806 (1969).

*Societe*, 482 U.S. at 557–58, 107 S.Ct. at 2562–63 (Blackmun, J., concurring in part). Accordingly, the appropriate inquiry on this issue is the "host" country's amenability to the manner of discovery sought to be utilized by the plaintiffs.

Although not all civil-law countries have expressed their disfavor of private litigants' use of the Federal Rules' procedures within its borders, of those which have, France has been among the most emphatic. *See supra* note 3. Indeed, as defendants point out, and as the Court has earlier described in part, France has even amended its civil and penal codes to incorporate the Hague Evidence Convention, and proscribe foreign litigants' use of alternative, unauthorized procedures. *Id.; see* Defs' mem., Exh. G at 10. The simple fact that, in joining the Convention, France has consented to its procedures is an expression of France's sovereign interests and weighs heavily in favor of the use of those procedures. *Hudson*, 117 F.R.D. at 38.

Finally, turning to the third prong of the *Societe* majority's test—whether Convention procedures will be effective—, plaintiffs raise the spectre that the process of using Convention devices might prove "amazingly cumbersome and enervating", and include time delays resulting from translation requirements, and appeals within the French judicial system stemming from potential refusals to execute letters of request. Pltfs' mem. at 19–20. Nevertheless, the Court shares Judge Munson's belief that the major obstacle to the effective use of the Convention procedures, if one there be, is litigants' lack of familiarity with them. *Hudson*, 117 F.R.D. at 38. Although, in theory, learning-curve costs might make Convention procedures more costly in terms of efficiency, such inconveniences alone pale beside the importance of respecting France's sovereign interests, and the Court's concern for fairness to foreign litigants. *Id.; see Societe*, 482 U.S. at 546, 107 S.Ct. at 2557.

In any event, and notwithstanding plaintiffs' unsupported speculation, there is no reason, on the record before the Court, to believe that Convention procedures will be ineffective in producing the discovery to which plaintiffs are entitled. As noted above, France has amended its civil code specifically to permit use of Convention procedures by foreign litigants. *See su-*

**356**

pra; compare *Hudson,* 117 F.R.D. at 39 (even where West Germany declared it would not permit performance of certain Convention procedures, plaintiffs made insufficient showing that remaining procedures would be unavailing). Indeed, Justice Blackmun responded to apprehensions similar to those expressed by plaintiffs, explaining that "[e]xperience with the Convention suggests [that] contracting parties have honored their obligations to execute letters of request expeditiously and to use compulsion if necessary." *Societe,* 482 U.S. at 562, 107 S.Ct. at 2565 (Blackmun, J., concurring in part). Finally, even if Convention procedures should prove unsuccessful in producing the discovery to which plaintiffs are entitled, the Court retains the authority to order Source Perrier to produce the requested material under the provisions of the Federal Rules. *Id.* at 539–40, 107 S.Ct. at 2553–54.

In sum, all three prongs of the test set forth in *Societe* suggest utilization of Convention procedures. Accordingly, defendants' motion for a protective order is GRANTED such that the Court hereby ORDERS plaintiffs to employ the procedures set forth in the Hague Evidence Convention in pursuing any discovery from Source Perrier, or of materials or information otherwise located in France. Should these procedures prove unavailing, and upon request, the Court shall consider modification of this Order.

### CONCLUSION

For the reasons and upon the terms and conditions set forth above, plaintiffs' motion to compel is GRANTED in part and DENIED in part. Also for the reasons described above, defendants' motion for a protective order is GRANTED such that the Court ORDERS plaintiffs to employ the procedures set forth in the Hague Evidence Convention in pursuing any discovery from Source Perrier, or of materials or information otherwise located in France.

SO ORDERED.