## VALOIS OF AMERICA, INC.

### v.

## RISDON CORPORATION

### No. 3:95 CV 1850(AHN).

United States District Court,
D. Connecticut.

July 23, 1997.

Brian E. Moran, Ralph W. Johnson, III, Robinson & Cole, Stamford, CT, Robert C. Nabinger, Robert E. Hillman, Mark J. Hebert, Jeffrey L. Snow, Fish & Richardson, Boston, MA, for plaintiffs.

Gene S. Winter, Ronald J. St. Onge, David H. Hwang, Todd M. Oberdick, Stephen P. McNamara, Wesley W. Whitmyer, Jr., St. Onge, Steward, Johnston & Reens, Stamford, CT, for defendants.

*RULING ON VALOIS S.A.'S MOTION FOR PROTECTIVE ORDER THAT DISCOVERY BE TAKEN UNDER HAGUE CONVENTION*

MARGOLIS, United States Magistrate Judge.

On August 31, 1995, plaintiff, Valois of America, Inc. ["Valois America"] filed this

action against defendant Risdon Corporation ["Risdon"]. (Dkt. # 1). Valois America seeks a declaratory judgment that Risdon's U.S. Patent No. 4,773,553 [the " '553 Patent"] is invalid and is not infringed by Valois America's Seal Tight pump assembly (Count One). Valois America also alleges that Risdon's accusations of infringement constitute misuse of the '553 Patent (Count Two) and violate the Connecticut Unfair Trade Practices Act ["CUTPA"], Conn.Gen.Stat. § 42–110a *et seq.* (Count Three).

On November 2, 1995 and September 13, 1996, Risdon filed amended answers charging that Valois America infringes Claim 23 of the '553 Patent, and denying that the '553 Patent is misused and invalid. (Dkt. ## 11 & 65). On November 2, 1995 and September 13, 1996, Risdon also filed counterclaims and third-party complaints against Valois and Valois America's France-based manufacturing division, Valois S.A. ["Valois France"]. (Dkt. ## 9, 11, 65–66). The counterclaim alleges that both Valois America and Valois France infringe Claim 23 of the '553 Patent. Risdon seeks monetary damages and preliminarily and permanently to enjoin Valois America and Valois France from making, using or selling the Valois Seal Tight spray pump assembly.

On December 26, 1995 and September 30, 1996, Valois France filed counterclaims against Risdon, alleging that the '553 Patent is invalid, unenforceable, and has not been infringed by any act of Valois France (First Counterclaim) and alleging that Risdon has violated CUTPA in its pursuit of litigation (Second Counterclaim). (Dkt. ## 25 & 67. *See also* Dkt. # 71).

Pursuant to deadlines set by this Magistrate Judge (*see* Dkt. ## 90–92), on June 20, 1997, Valois France filed the pending motion for a protective order that discovery be taken under the Hague Convention, and brief and affidavit in support. (Dkt. ## 94–96).[1] On July 11, 1997, Risdon filed its brief in opposition. (Dkt. # 98).[2] On July 21, 1997, Valois France filed its reply brief. (Dkt. # 99).[3]

For the reasons stated below, the motion for protective order is denied without prejudice to renewal at a later time.

## I. DISCUSSION

Risdon has served upon Valois France a number of discovery requests, including its First Set of Requests for Production of Documents and Things, with thirty-seven items, First Set of Interrogatories, with twenty-four items, First Set of Requests for Admission, with thirty-five items, and Notice of Deposition. (Dkt. # 96, Exhs. A–D). Valois France seeks a protective order that discovery from it be taken under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, codified at 28 U.S.C. § 1781 ["Hague Convention"]. The United States and France both have adopted the Hague Convention.

The Hague Convention was addressed extensively by the United States Supreme Court ten years ago in *Societe Nationale Industrielle Aerospatiale v. United States District Court,* 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987) ["*Societe Nationale*"], which involved personal injury lawsuits brought against the French manufacturers of aircraft that had crashed. Like here, the French companies filed a motion for protective order that discovery be had only under the Hague Convention, and not the Federal Rules of Civil Procedure. The Supreme Court held that the Hague Convention did

---

**1.** Twelve exhibits were attached to the affidavit: copies of Risdon's discovery requests to Valois France (Exhs. A–D); copy of a letter, dated December 21, 1995, from Valois France's French counsel (Exh. E); and copies of correspondence between counsel, from March 10, 1997 until June 6, 1997 (Exhs. F–L).

**2.** Five exhibits were attached: copy of Valois France's answer and counterclaim to Risdon's third party complaint (Exh. A); copies of correspondence between counsel prior to the com-

mencement of this action, from January 20, 1995 through April 3, 1995 (Exh. B); copy of a letter, dated March 14, 1997, from Valois' counsel to Risdon's counsel (Exh. C); copy of Valois America's discovery requests upon Risdon (Exh. D); and copy of a letter, dated July 8, 1997, from Risdon's French counsel (Exh. E).

**3.** One exhibit was attached: a copy of a letter, dated July 17, 1997, from Valois France's French attorney (Exh. A).

not preempt the Federal Rules with respect to discovery from foreign litigants. *Id.* at 539–40, 107 S.Ct. 2542. Instead, the parties could avail themselves of the procedures set forth in the Hague Convention as a supplementary measure: "[I]t appears clear to us that the optional [Hague] Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the [Hague] Convention." *Id.* at 541, 107 S.Ct. 2542. The Supreme Court further "decline[d] to hold as a blanket matter that [international] comity requires resort to Hague … Convention procedures without prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." *Id.* at 544, 107 S.Ct. 2542 (footnote omitted). The Court continued:

> Some discovery procedures are much more "intrusive" than others.… Even if a court might be persuaded that a particular document request was too burdensome or too "intrusive" to be granted in full, with or without an appropriate protective order, it might well refuse to insist upon the use of [Hague] Convention procedures before requiring responses to simple interrogatories or requests for admissions. The exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke.
>
> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper use of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive careful consideration.… American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations.… We do not articulate specific rules to guide this delicate task of adjudication.

*Id.* at 545–46, 107 S.Ct. 2542 (footnote omitted).

■ A party which seeks the application of the Hague Convention procedures rather than the Federal Rules bears the burden of persuading the trial court. *In re Perrier Bottled Water Lit.*, 138 F.R.D. 348, 354 (D.Conn.1991) ["*Perrier*"] (product liability action against French companies); *Rich v. KIS California, Inc.*, 121 F.R.D. 254, 257–58 & n. 3 (M.D.N.C.1988) (breach of contract action against French corporation). *See also Doster v. Schenk*, 141 F.R.D. 50, 51–52 & n. 3 (M.D.N.C.1991) (personal injury action against German contractor); *Benton Graphics v. Uddeholm Corp.*, 118 F.R.D. 386, 388–89 & n. 2 (D.N.J.1987) (breach of contract action against Swedish corporations). *But see Hudson v. Hermann Pfauter GmbH & Co.*, 117 F.R.D. 33, 38 (N.D.N.Y.1987) (in product liability action against German manufacturer, court held that burden is on party opposing use of Hague Convention).

■ In *Perrier*, the late Judge Daly applied the "three-pronged inquiry" set forth in *Societe Nationale*, namely (1) the examination of the particular facts of the case, particularly with regard to the nature of the discovery requested; (2) the sovereign interests in issue; and (3) the likelihood that the Hague Convention procedures will prove effective. 138 F.R.D. at 354. *See also Doster*, 141 F.R.D. at 52; *Rich*, 121 F.R.D. at 257; *Benton Graphics*, 118 F.R.D. at 388.

With respect to the first prong, Judge Daly found plaintiffs' discovery requests to be "excessive," "abusive," "immaterial," "intrusive," and seeking "an extraordinary vol-

ume, of information, much of it irrelevant to the cases at hand." 138 F.R.D. at 354–55. With respect to the second prong, Judge Daly described France's expression of its dislike of the Federal Rules of Civil Procedure as "most emphatic," which expression "weighs heavily in favor" of the utilizing the Hague Convention. *Id.* at 355. Turning to the third prong, Judge Daly ruled that any inconveniences occasioned by the more time-consuming Hague Convention procedures "pale beside the importance of respecting France's sovereign interests, and the Court's concern for fairness to foreign litigants." *Id.* Judge Daly thus concluded that all three prongs of the *Societe Nationale* test suggested utilization of the Hague Convention procedures. *Id.* at 356.

█ The same result was found in *Hudson*, where plaintiffs' first set of interrogatories contained ninety-two interrogatories, many of which contained subparts; Chief District Judge Munson observed that such interrogatories "cannot be described as 'unintrusive.'" 117 F.R.D. at 34. With respect to the second and third prongs, Chief Judge Munson concluded "the major obstacle" to effective use of the Hague Convention was its lack of familiarity by attorneys and courts. *Id.* at 38. He continued, "To assume that the 'American' rules are superior to those procedures agreed upon by the signatories of the Hague Convention without first seeing how effective [Hague] Convention procedures will be in practice would reflect the same parochial biases that the [Hague] Convention was designed to overcome." *Id.* at 38–39. Thus, under these circumstances, the court concluded that use of Hague Convention procedures "seems desirable." *Id.* at 40.

The court reached the opposite conclusion in *Rich*, where plaintiffs had narrowed their discovery requests to ten interrogatories limited to the issue of personal jurisdiction, the Magistrate Judge gave little "deference" to France's dislike of American discovery procedures, and defendants failed to demonstrate that the Hague Convention Procedures would be more effective than the use of the Federal Rules. 121 F.R.D. at 258. The judge thus concluded that "use of the Feder-

al Rules of Civil Procedure is in the best overall interest." *Id.* at 260.

In many of the post-*Societe Nationale* decisions addressing this issue, except *Perrier* and *Hudson*, the judges were unwilling to attach much significance to the sovereign interests involved, finding no important interest to be offended by use of the Federal Rules, and instead recognized that use of the Hague Convention could involve considerable time and expense. *Doster*, 141 F.R.D. at 53–54; *Haynes v. Kleinwefers*, 119 F.R.D. 335, 338 (E.D.N.Y.1988) (product liability claim against German manufacturer); *Benton Graphics*, 118 F.R.D. at 391–92.

The critical prong of the *Societe Nationale* analysis, then, is the first one. In *Doster*, the Magistrate Judge emphasized this country's "strong interest" in the product liability actions, based upon injuries from the German defendant's construction activities in this country. 141 F.R.D. at 52. The German corporation was not "surprised or disadvantaged by litigation under the Federal Rules of Civil Procedure." *Id.* Plaintiffs had served about twenty interrogatories, five requests for admissions, and twelve requests for production of documents. After his review of these requests, the judge found them to be "fairly standard for these types of cases," "routine," "not overly burdensome in amount or scope," and "not . . . potentially harassing or of . . . a sensitive nature." *Id.* at 53. "More importantly, both plaintiffs have expressed their willingness to cooperate with defendant's counsel to narrow the scope of discovery and reduce the intrusive nature of the requests." *Id.* Under these circumstances, the Magistrate Judge ordered that the parties proceed, at least initially, under the Federal Rules of Evidence. *Id.* at 54–55.

The same conclusion was reached in *Benton Graphics*, where defendants "have largely failed to specifically identify their objections," thus making it "impossible for [the Court] to determine which, if any, requests are overbroad and burdensome." 118 F.R.D. at 390. However, after her review of plaintiff's interrogatories, the Magistrate Judge determined that "a number of the requests are not 'simple' and may require streamlining if [the case was] to proceed under the

federal rules." *Id.* The Magistrate Judge instructed counsel to confer to limit and resolve the scope of discovery requests, ensuring that they were reasonable, not overly burdensome, and not too intrusive. *Id.*

In *Haynes,* the discovery sought was not "extensive." 119 F.R.D. at 339. An additional factor considered by the Magistrate Judge was that the defendant asserted cross-claims against its codefendant and a third-party claim against plaintiff's employer. The judge concluded: "To require that all parties seeking discovery of [defendant], including parties against whom it has brought claims, employ the more complicated and expensive procedures of the Hague Convention while [defendant] proceeds with its discovery under the Federal Rules is not an equitable result." *Id.* at 338. Again, the court held that the Federal Rules would apply.

Valois France additionally relies upon the French "blocking statute," French Penal Code Law No. 80–538, which provides:

> Subject to treaties or international agreements and applicable laws and regulations, it is prohibited for any party to request, seek, or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial of administrative proceedings or in connection therewith.

*See also Societe Nationale,* 482 U.S. at 526 n. 6, 107 S.Ct. 2542; *Perrier,* 138 F.R.D. at 352–53 & n. 3; *Rich,* 121 F.R.D. at 256 & n. 2. In *Societe Nationale,* the Supreme Court minimized the effect of this statute upon litigation pending in the United States:

> The French "blocking statute" . . . does not alter our conclusion. It is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute. Nor can the enactment of such a statute by a foreign nature require American courts to engraft a rule of first resort onto the Hague Convention, or otherwise to provide the nationals of such a country with a preferred status in our courts. It is clear that American courts are not required to adhere blindly to the directives of such a statute. Indeed, the language of the statute, if taken literally, would appear to represent an extraordinary exercise of legislative jurisdiction by the Republic of France over a United States district judge, forbidding him or her to order any discovery from a party of French nationality, even simple requests for admissions or interrogatories that the party could respond to on the basis of personal knowledge. . . . Extra-territorial assertions of jurisdiction are not one-sided. While the District Court's discovery orders arguably have some impact in France, the French blocking statute asserts similar authority over acts to take place in this country. The lesson of comity is that neither the discovery order nor the blocking statute can have the same omnipresent effect that it would have in a world of only one sovereign. The blocking statute thus is relevant to the court's particularized comity analysis only to the extent that its terms and its enforcement identify the nature of the sovereign interests in nondisclosure of specific kinds of material.

482 U.S. at 544–45 n. 29, 107 S.Ct. 2542 (citations omitted).

As previously mentioned, the late Judge Daly placed great emphasis upon this French "blocking statute," in describing France as "most emphatic" in its preference for Hague Convention procedures over the American rules. *Perrier,* 138 F.R.D. at 355. In citing footnote 29 of the *Societe Nationale* decision, the Magistrate Judge in *Rich* did not give this statute much weight:

> [T]his statute, which is solely designed to protect French businesses from foreign discovery, is both overly broad and vague and need not be given the same deference as a substantive rule of law. In general, broad blocking statutes, including those which purport to impose criminal sanctions, which have such extraordinary extra-territorial effect, do not warrant much deference.

121 F.R.D. at 258 (other citation omitted). *Compare* Dkt. # 96, Exh. E *with* Dkt. # 98, Exh. E.

This case presents a closer question than those addressed above. With regard to the second prong in *Societe Nationale*, like the Supreme Court in *Societe Nationale* and the Magistrate Judge in *Rich*, and contrary to *Perrier*, this judicial officer does not give substantial deference to France's preference for the Hague Convention, as expressed in its "blocking statute." With regard to the third prong, as recognized in *Doster*, 141 F.R.D. at 54, *Perrier*, 138 F.R.D. at 355, *Rich*, 121 F.R.D. at 258, *Haynes*, 119 F.R.D. at 338, and *Benton Graphics*, 118 F.R.D. at 391, and contrary to the position taken in *Hudson*, 117 F.R.D. at 38–39, it is generally recognized that procedures under the Hague Convention are far more cumbersome than under the Federal Rules of Civil Procedures.

The critical examination then is the first prong of the *Societe Nationale* inquiry, namely "the particular facts of the case, particularly with regard to the nature of the discovery requested." As previously mentioned, Valois France is not merely a third-party defendant, but also has asserted a counterclaim against Risdon. As the Magistrate Judge ruled in *Haynes*, it would not produce "an equitable result" if Risdon's discovery from Valois France were governed by "the more complicated and expensive procedures" of the Hague Convention, while Valois France could employ the Federal Rules in seeking discovery from Risdon.

As in *Perrier, Hudson, Doster,* and *Benton Graphics*, Risdon's requests for production, interrogatories, and requests for admission (Dkt. # 96, Exhs. A–C), which collectively contain ninety-six items, are hardly "unintrusive." The Court need not decide whether Risdon's discovery requests are reasonable under the Federal Rules, if they were submitted to an American litigant. Given the concerns articulated by the Supreme Court in *Societe Nationale*, they clearly are "too burdensome and too 'intrusive.'" 482 U.S. at 545, 107 S.Ct. 2542. However, Valois France's counsel has expressed a willingness to cooperate with Risdon's counsel in attempting to resolve their differences. (Dkt. # 96, Exhs. F–J). Thus, this case resembles *Doster* and *Benton Graphics*, in that the better approach is to have counsel confer further, in an attempt to limit and resolve the scope of discovery requests, so as to ensure that such requests to Valois France are reasonable, not overly burdensome, and not too intrusive. If Risdon continues to insist upon burdensome and intrusive discovery from Valois France, then resort to the Hague Convention procedures ultimately may be appropriate.

Therefore, counsel for Risdon and Valois France are instructed to confer with one another, for the purposes indicated above. If no amicable resolution of this issue is reached, after counsel confer with one another in a professional and reasonable manner, then on or before **August 22, 1997,** either counsel may file supplemental briefs, which shall relate, in detail, those discovery requests as to which no agreement was reached and each party's position with respect to such discovery requests. The Magistrate Judge will thereafter issue a Supplemental Ruling, which decides whether Risdon's discovery from Valois France will continue under the Federal Rules of Civil Procedure or under the Hague Convention.

## II. CONCLUSION

For the reasons stated above, Valois France's motion for protective order (Dkt. # 94) is *denied without prejudice to renewal at a later time,* if counsel are unable to resolve their differences over the extent of Risdon's discovery from Valois France.

*See* 28 U.S.C. § 636(b) (**written objections to ruling must be filed within ten days after service of same**); F.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary of Health & Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (**failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit**).