**PROFESSIONAL ADJUSTING SYSTEMS OF AMERICA, INC., et al.**

v.

**GENERAL ADJUSTMENT BUREAU, INC.**

**Civ. A. No. 72–736.**

United States District Court, E. D. Pennsylvania.

Nov. 8, 1972.

See also, D.C., 55 F.R.D. 404.

**649**

David Berger, H. Laddie Montague, Jr., Joel C. Meredith, Philadelphia, Pa., for plaintiffs.

John F. Wilson, III, Raymond W. Midgett, Jr., Dechert, Price & Rhoads, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This action is before the Court on Defendant's Motion to transfer it to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) which provides:

"For the convenience of parties and witnesses, in the interest of justice, a District Court may transfer any civil action to any other district or division where it might have been brought."

The relevant facts are as follows. Plaintiff, Professional Adjusting Systems of America, Inc. (PASA), is a corporation engaged in providing insurance adjusting services, with its principal office and place of business in Minneapolis, Minnesota. Plaintiff, Solberg Adjustment Company, is an independent insurance concern and a member of PASA, with its principal office and place of business also in Minneapolis, Minnesota. Plaintiff, Free State Adjusting Company, is an independent insurance concern and a member of PASA, with its principal office and place of business in Baltimore, Maryland. Defendant, General Adjustment Bureau, Inc. (GAB), is a New York Corporation with its executive offices located at 123 William Street, New York, N. Y., within the Southern District of New York. The stock in GAB is owned by some 170 insurance companies (159 stock companies and 11 mutuals according to the complaint). It is alleged that the stockholders in GAB, either directly or through companies held by or holding controlling interest in them, account for about three-fourths of all assets of all companies engaged in the property damage insurance field. The complaint states a cause of action based upon § 4 of the Clayton Act, 15 U.S.C. § 15, the gist of which is that GAB and its shareholders illegally conspired and combined to give GAB an illicit advantage in securing insurance adjustment business over some 1300 independent insurance adjusters which the named plaintiff seeked to represent as a class. Members

of the purported class are scattered throughout the United States.

 From an examination of the Complaint, Motion to Transfer, Brief, Opposing Brief, Reply Brief, Supplemental Brief, and the affidavits heretofore filed, certain things appear fairly clear. First, the Complaint states a good cause of action and both jurisdiction and venue are proper under 15 U.S.C. § 22. The defendant, GAB, has at least five local offices in this District, which establishes sufficient contacts to satisfy both due process requirements and the venue provisions of the Clayton Act, supra.

Second, it is nearly certain that almost all of the records and documents through which this action may be proved or disproved are in the Southern District of New York. All of GAB's records are there, and the records of approximately one-fourth of the shareholder companies, controlling approximately 39% of the stock, are in the Southern District of New York. Further, one-sixth of the shareholders, accounting for 23% of the stock in GAB, are headquartered in New England, upstate New York or Northern New Jersey. Less than 4% of the shareholders are in the Eastern District of Pennsylvania, accounting for around 8% of the stock in GAB.

Third, the relevant witnesses are in the Southern District of New York, insofar as they are concentrated in any one place at all. All of the officers of GAB, most of the past officers of GAB, and most of the officers of a large percentage of the shareholder companies, are in the Southern District of New York. Named plaintiffs have no witnesses in the Eastern District of Pennsylvania identified to date, and the members of the unnamed class of plaintiffs proposed are spread rather evenly across the country, as are presumably the rest of the GAB shareholders and local offices, though doubtless some of each of these groups are in the Eastern District of Pennsylvania.

The first requirement for a transfer under Section 1404(a) is that the action can be transferred only to a district where the action might have been brought originally, that is, at the time the suit was originally commenced. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). In the instant case, this presents little problem as there is no real question that the suit could have been brought originally in the Southern District of New York.

The second requirement is a good deal more complex, as pointed out by Judge Higginbotham of this Court in his two recent and very complete discussions of this problem, Poland v. Conductron Corporation, et al., 340 F.Supp. 602 (March 24, 1972), and Hawkins v. Holiday Inns, Inc. (May 31, 1972). This is the requirement that the transfer must be "for the convenience of parties and witnesses, in the interest of justice . . .". It should be noted here that Judge Higginbotham, following other Courts, interpreted the phrase "in the interest of justice" to be not merely a modifier of the foregoing phrase "for the convenience of parties and witnesses", but a consideration in and of itself, that is, that the transfer must be both for the convenience of the parties and the witnesses, *and* in the best interest of justice. Poland v. Conductron Corporation, supra at page 603. A few decisional rules of thumb emerge from Judge Higginbotham's opinions and the cases cited therein. The first is that the Plaintiffs' choice of forum must be accorded great weight. The second is, that because of the great number of persons with equal rights as plaintiffs, and the large number of districts in which venue exists under the venue statutes, the weight accorded to Plaintiffs' choice of forum is to be reduced in class actions, especially in class actions of a national nature, that is, where the plaintiff class is scattered broadly throughout the country. It is with these principles in mind that this Court turns to a consideration of the present case, which

presents a few novel aspects within the framework of these principles.

This Court has concluded, first, that the aggregate convenience of parties strongly militates for transfer to the Southern District of New York. Most of the evidence seems to be there. A majority of relevant witnesses seem to be there, or near there, with the rest scattered across the country. The Southern District of New York seems much more convenient from the viewpoint of Court administration, much more convenient for most defendants, much more convenient for Plaintiffs' discovery, no less convenient in terms of access to the named plaintiffs, and no less convenient to the proposed class of plaintiffs as a whole. No specific acts or evidence peculiarly necessary to proof of the case have been shown in the Eastern District of Pennsylvania, and we conclude there are none.

■ It is apparent that this case was brought in the Eastern District of Pennsylvania for one reason only. Plaintiffs' attorney, one of the most able anti-trust lawyers in the country, maintains his office here. Buttressing the argument that Plaintiffs' choice of forum, for whatever reason, must be given great weight, Plaintiffs' argue that there is nothing wrong with choosing to bring a Clayton Act anti-trust class action with broad national implications in the district where the best lawyer resides as long as minimal jurisdictional contacts with that district exist. The reason for the broad scope of the Clayton Act venue provisions was to give defendant the widest possible selection of venue for his benefit, to promote a "private attorney general" type policy for exposing and policing combinations in restraint of trade. It makes more sense in light of this policy, to allow a named plaintiff to bring such an action where the best representation can be had most economically than it does to make him bring it where he happens to reside. And unless Plaintiffs' choice of forum on such grounds is respected, cases will almost inevitably end up in defendant's home

district for lack of any reason that they should be elsewhere (in a nationwide anti-trust class action), since the acts emanating from the center of the spider web have fairly uniform effect on every other section of it.

Ranged against this argument are three considerations. First, when a case becomes as big as most nationwide anti-trust class actions, the very size of the potential recovery tends to insure that it will be ably litigated wherever it is ultimately brought. If the action succeeds, attorneys' fees and costs are paid by defendant, insuring that monetary inducement will be sufficient to attract the best counsel wherever the action may be, if such a huge case appears meritorious. The class action device has moved economic forces in such a way that plaintiffs and defendants are more in parity.

Second, although the Court is well aware of the outstanding qualifications of the particular attorney in this case, Courts cannot really inquire into the actual eminence of the attorney whom a named plaintiff happens to have selected to prosecute his class action. Therefore, if Plaintiffs' choice of forum were to be upheld, based solely upon the presence of competent counsel, it would effectively mean that plaintiff could actually bring an anti-trust class action wherever it might be brought and be insulated against transfer simply by invoking his regard for the quality of his attorney, whether that quality were there in actual fact or not.

Third, and perhaps most persuasive, is the danger that certain judicial districts might in the course of time simply become specialized adjuncts of the successful practice drawn there and brought there by competent counsel. At least some territorial requirement more than that present in every district in a nationwide class action, has the virtue of spreading the cases over the judicial system more equitably.

■ If there had been any necessary facts peculiarly capable of proof in this District, any necessary witnesses in this

District, if the Plaintiff class had shown any concentration in this District, perhaps the decision of this Court would have been different. But on the facts presented by this case, it is in the opinion of this Court most logical for the convenience of parties and witnesses, and also in the best interest of justice, that the Defendant's Motion for Transfer be GRANTED.