

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-13-2004

# In Re Automotive

Precedential or Non-Precedential: Precedential

Docket No. 02-4272

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re Automotive " (2004). *2004 Decisions*. Paper 954.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/954

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-4272
_____

IN RE: AUTOMOTIVE REFINISHING
PAINT ANTITRUST LITIGATION

BASF AG and BASF COATINGS AG,
                    Appellants
_____

Appeal from the United States District
Court
For the Eastern District of Pennsylvania
D.C. No.: MDL 1426
District Judge: Honorable R. Barclay
Surrick

_____

Argued: December 15, 2003

Before: ROTH, McKEE, and ROSENN,
             Circuit Judges

(Filed    February 13, 2004     )


Stephen Fishbein (Argued)
Shearman & Sterling
599 Lexington Avenue
New York, NY   10022

Edward W. Madeira, Jr.
Matthew J. Hamilton
Pepper Hamilton
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA   19103

Raymond A. Just
Shearman & Sterling
55 California Street
20th Floor
San Francisco, CA   94104

Counsel for Appellant

Geoffrey C. Hazard, Jr. (Argued)
University of Pennsylvania
The Law School
3400 Chestnut Street
Philadelphia, PA   19104-6204

Gerald J. Rodos
Barrack, Rodos & Bacine
2001 Market Street
3300 Two Commerce Square
Philadelphia, PA   19103

Warren Rubin
Law Offices of Bernard M. Gross
1515 Locust Street, Suite 200
Philadelphia, PA   19102

Joseph C. Kohn
Robert J. LaRocca
Kohn, Swift & Graf
One South Broad Street, Suite 2100
Philadelphia, PA    19107

Howard I. Langer
Columb, Honik & Langer
121 South Broad Street, 9th Floor
Philadelphia, PA 19107

Counsel for Appellees

William T. Hangley
Hangley, Aronchick, Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA   19103

Counsel for Amicus-Appellant
Fedr. German Ind.

James J. Rodgers
Dilworth Paxson
1735 Market Street
3200 The Mellon Bank Center
Philadelphia, PA   19103

Counsel for Amicus-Appellant
Fed. Republic Germany

_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.


This certified interlocutory appeal, arising out of alleged unlawful price-fixing by both domestic and foreign corporations, raises questions of considerable importance in antitrust litigation involving foreign nationals. Three of the issues are of first impression to this Court. The first issue is whether worldwide service of process authorized under Section 12 of the Clayton Act, 15 U.S.C. § 22, upon foreign corporations is independent of the specific venue provision contained in that statute. The second issue is whether a federal court's personal jurisdiction over a foreign corporation in antitrust litigation may be predicated on the foreign corporation's contacts with the United States as a whole (national contacts analysis), rather than with the specific forum in which the court sits (local contacts analysis). The final issue is whether jurisdictional discovery from foreign nationals may proceed under the Federal Rules of Civil Procedure without first resorting to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (Hague Convention or Convention). 23 U.S.T. 2555, reprinted in 28 U.S.C. § 1781 Note.

The District Court denied the motions to dismiss for lack of personal jurisdiction and the joint motion for a protective order filed by two German corporations, BASF Aktiengesellschaft (BASF AG) and BASF Coatings Aktiengesellschaft (BASF Coatings) (collectively "appellants"), defendants in the underlying antitrust litigation. The District Court construed Section 12 of the Clayton Act as authorizing worldwide service of process independently of the specific venue provision contained in that statute. The Court also held that personal jurisdiction over the foreign corporations would be measured on their contacts with the United States as a whole, rather than with the forum state. The Court finally rejected a rule favoring first resort to Hague Convention procedures for jurisdictional discovery of foreign defendants. BASF AG and BASF Coatings timely appealed. We affirm.

I.

The underlying federal antitrust class litigation involves sixty-three actions filed in five states, Pennsylvania, New Jersey, Ohio, Kentucky, and Delaware, by private parties. Those actions were transferred to, and consolidated in, the United States District Court for the Eastern District of Pennsylvania for pre-trial purposes by the Judicial Panel on Multidistrict Litigation.[1] The class action complaint

_____

[1] The defendants, in addition to the two appellants here, are: PPG Industries, Inc.; E.I. DuPont de Nemours and Company; DuPont Performance Coatings, Inc.; Sherwin-William, Co.; Sherwin-William Automotive Finishes Corporation; Akzo Nobel Car Refinishers B.V., a Dutch company; Akzo Nobel Coatings, Inc., a

alleges that from 1993 to at least December 31, 2000, the foreign and domestic defendants conspired to raise and maintain the prices of automotive refinish paint throughout the United States. All defendants, except the appellants, have stipulated to certification of a national class consisting of all direct purchasers of automotive refinishes from the defendants.

The appellants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In support of their motions to dismiss, the appellants submitted affidavits stating that they did not have presence in the state of Pennsylvania and never sold any automotive refinish paint to any customers in Pennsylvania. The plaintiffs replied that the appropriate forum for measuring the appellants' contacts for purposes of personal jurisdiction is the United States as a whole, rather than the forum state of Pennsylvania. The plaintiffs opposed the motions to dismiss and also served jurisdictional discovery requests pursuant to the Federal Rules of Civil Procedure, seeking production of documents concerning the appellants' contacts with the United States as a whole.

The plaintiffs submitted publicly available information to show a threshold case of personal jurisdiction based on the appellants' contacts with the United States and support their request for

_____

U.S. corporation; and BASF Corporation, a U.S. corporation based in New Jersey, which is part of the BASF Group, a global network of corporations that include the two German corporations, which are the only appellants in this interlocutory appeal.

jurisdictional discovery.[2] In response to the plaintiffs' request for jurisdictional discovery, the appellants filed a joint motion for a protective order, contending that the plaintiffs' discovery request was overly broad and burdensome. They argued also that any jurisdictional discovery should proceed first under the Hague Convention, of which the United States and Germany are signatories.

The reasons proffered by the appellants' expert, Martin Reufels, were that Germany, unlike the United States, viewed the gathering of evidence as a judicial, rather than private, function. Therefore, Germany had a sovereign

_____

[2] The District Court noted the following facts submitted by the plaintiffs: the appellants are the holders of numerous patents in the United States; in its publicly released documents, such as the forms filed with the Securities and Exchange Commission and annual reports, and its web site, BASF AG presents itself as part of a globally integrated group, BASF or BASF Group, consisting of BASF AG, the parent corporation in the group and its 153 consolidated subsidiaries; BASF AG owns 100 percent of the shares of BASF Corporation, a domestic corporation located in New Jersey; BASF AG's publicly released documents show that it sold approximately $1.5 billion in goods to its wholly owned subsidiary, BASF Corporation, in 2000; according to BASF's website, BASF Coatings has a "significant market position[ ] in North America"; BASF Coatings maintains an office in Michigan; and according to BASF AG's 2001 annual report, the BASF Group explicitly endorses the "exchange of staff among BASF Group companies" as being "critical" in achieving its worldwide corporate goals.

interest in keeping discovery conducted within its borders in conformity with its laws. According to Reufels, compelling the appellants to produce documents pursuant to the Federal Rules of Civil Procedures would offend Germany's sovereign interests.

In its order and careful accompanying opinion, the District Court, Surrick, J., denied without prejudice the appellants' motions to dismiss. Rejecting the appellants' contrary arguments, the Court construed Section 12 of the Clayton Act as authorizing worldwide service of process independently of the specific venue provision contained in that statute. The Court held that the relevant forum for purposes of proof of personal jurisdiction was the United States as a whole, rather than the forum state of Pennsylvania. The Court concluded that the plaintiffs had made a threshold showing of personal jurisdiction that warranted jurisdictional discovery.[3] In a separate order and accompanying opinion, the

Court denied the appellants' joint motion for a protective order requiring the plaintiffs to conduct their jurisdictional discovery first under the Hague Convention procedures, rather than the Federal Rules of Civil Procedure.

Both the District Court and this Court granted the appellants' petition for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The appellants raise two issues for review on this interlocutory appeal. The first issue is whether a plaintiff may invoke the worldwide service of process provision contained in Section 12 of the Clayton Act and, thus, national contacts analysis, without satisfying the specific venue provision also contained in that statute. The second issue is whether a plaintiff may be permitted to seek jurisdictional discovery from foreign defendants under the Federal Rules of Civil Procedure without first resorting to the Hague Convention. We agree with the District Court and answer both in the affirmative.[4]

II.

The first issue raised by the

---

[3] The appellants have not appealed from the Court's ruling that the plaintiffs have shown a prima facie case of personal jurisdiction. Accordingly, we do not review that ruling. "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). The District Court rejected the plaintiffs' arguments that the jurisdictional contacts of BASF Corporation, the wholly owned domestic subsidiary of BASF AG, should be imputed to BASF AG and that the jurisdictional contacts of the appellants' alleged co-conspirators should be imputed to the appellants.

[4] The District Court has original federal question subject matter jurisdiction under 28 U.S.C. § 1331 over this class action brought under 15 U.S.C. § 1 (section 1 of the Sherman Act) and 15 U.S.C. §§ 15 and 26 (sections 4 and 16 of the Clayton Act). We have appellate jurisdiction under 28 U.S.C. § 1292(b) over this interlocutory appeal. Because the certified issues on appeal involve pure questions of law, we review the District Court's rulings de novo. Bowers v. National Collegiate Athletic Ass'n, 346 F.3d 402, 410 (3d Cir. 2003).

4

appellants involves two conceptually distinct, though intertwined, sub-issues. One is whether the District Court erred in ruling that the service of process provision contained in Section 12 of the Clayton Act is independent of the venue provision also contained in that statute. Two is whether the Court erred in ruling that in federal antitrust litigation, personal jurisdiction should be assessed on the basis of the appellants' contacts with the United States as a whole (national contacts analysis), rather than with the forum state (local contacts analysis). The two sub-issues are intertwined because if there is no specific venue limitation in federal antitrust litigation involving a foreign corporate defendant, the defendant can be sued in any federal district court based on its aggregate contacts with the United States as a whole. Because they are intertwined and because the appellants present them as a single integrated issue, we discuss them together.[5]

### A.

Section 12 of the Clayton Act provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (emphasis added).[6]

---

[5] The Committee to Support the Antitrust Laws, a nonprofit corporation based in the District of Columbia, has submitted an amicus curiae brief in support of the plaintiffs' position on the two certified issues. The amicus curiae briefs in support of the appellants' position, submitted by the Federal Republic of Germany and the Federation of German Industries, do not address the first certified issue.

[6] Section 12 permits venue in any federal district in which a corporation is an "inhabitant," may be "found," or "transacts business." Those terms are defined as follows:

> Being an "inhabitant" is held to mean incorporated under the laws of that jurisdiction. E.g., Aro Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400, 404 (1st Cir. 1965), cert. denied, 383 U.S. 947, 86 S. Ct. 1199, 16 L. Ed. 2d 210 (1966). Being "found" in a district is generally equated with "doing business" there, and requires greater contacts than does "transacting business." E.g., Wood v. Santa Barbara Chamber of Commerce, Inc., 507 F. Supp. 1128 (D. Nev. 1980); Grappone, Inc. v. Subaru of America, Inc., 403 F. Supp. 123 (D.N.H. 1975); Friends of Animals Inc. v. American Veterinary Medical Ass'n, 310 F. Supp. 620 (S.D.N.Y. 1970).

Gen. Elec. Co. v. Bucyrus-Erie Co., 550 F. Supp. 1037, 1041 n.5 (S.D.N.Y. 1982). A corporation is "found" where it has "presence" and "continuous local activities" in the district. Caribe Trailer Systems, Inc. v. Puerto Rico Maritime Shipping Auth., 475 F. Supp. 711. 716

Section 12, a long sentence, consists of two separate clauses, the first relating to venue and the second concerning service of process and, therefore, personal jurisdiction. It is undisputed that the second clause authorizes nationwide, indeed worldwide, service of process on a defendant corporation in federal antitrust litigation. The clause provides that the defendant may be served "wherever it may be found," that is, wherever it is "doing business." See, e.g., Go-Video, Inc. v. Akai Elec. Co., Ltd., 885 F.2d 1406, 1413 (9th Cir. 1989) (Section 12 "authorizes worldwide service of process").

The parties dispute whether the two clauses of Section 12 should be read as an integrated whole or independently of each other. Specifically, they dispute whether the venue provision contained in the first clause of Section 12 must be satisfied before the plaintiffs could avail themselves of the authorization of worldwide service of process contained in the second clause. As explained by one court:

> [t]he dispute centers on whether the jurisdiction provision operates independently from the venue provision, specifically, whether "in such cases" in the second clause refers to "any suit, action, or proceeding under the antitrust laws against a corporation" or only to antitrust actions against corporations brought in a judicial district in which the corporation is either an "inhabitant," "may be found" or "transacts business." If the first

interpretation is adopted, plaintiffs can rely on 28 U.S.C. § 1391(d) [the Alien Venue Statute] which provides for venue in antitrust actions against foreign corporations "in any district" and on the second clause of Section 12 for personal jurisdiction over defendants based on a minimum contacts analysis considering their contacts with the United States as a whole. If the second interpretation prevails the service provision is only effective when, pursuant to Section 12's first clause, the action is brought in a district where the defendant resides, is found or transacts business.

In re Magnetic Audiotape Antitrust Litig., 171 F. Supp. 2d 179, 184 (S.D.N.Y. 2001), vacated sub nom. on other grounds, Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft, 31 Fed. Appx. 738, 2002 WL 385569 (2d Cir. March 12, 2002). The plaintiffs dispute whether the present litigation can only be brought in a federal district where the appellants are "residents," may be "found," or "transact[ ] business" based on their contacts with the forum district or state. They contend that it may be brought in any federal district based on the appellant's "minimum contacts" with the United States as a whole.

Currently, two sister Courts of Appeals differ as to the construction of Section 12. The plaintiff-appellees rely on the decision in Go-Video, Inc. v. Akai Elec. Co., Ltd., 885 F.2d 1406 (9th Cir. 1989), and a majority of recent District Courts' opinions to support their argument that the service or process provision is independent of the specific venue provision. On the other hand, appellants rely on the decision in GTE

(D.D.C. 1979) (quoting Fox-Keller, Inc. v. Toyota Motor Sales, U. S. A., Inc., 338 F. Supp. 812, 815 (E.D. Pa. 1972)).

6

New Media Services Inc. v. Bellsouth Corp., 199 F.3d 1343 (D.C. Cir. 2000), where the Court wrote:

> The language of the statute is plain, and its meaning seems clear: The clause before the semi-colon relates to a supplemental basis for venue in actions under the Clayton Act; the clause after the semi-colon relates to nationwide service of process in antitrust cases; and invocation of the nationwide service clause rests on satisfying the venue provision.

Id. at 1350.

The GTE court "aligned" itself with the position taken by the Second Circuit forty years ago in Goldlawr, Inc. v. Heiman, 288 F.2d 579, 581 (2d Cir. 1961) (holding in dicta that the expansive service of process provisions was contingent on satisfaction of the specific venue provision), rev'd on other grounds, 369 U.S. 463 (1962).[7]  The GTE court

---

[7] The Goldlawr court concluded that Section 12

> specifies where suit against a corporation under the antitrust laws may be brought, namely, in a district where it is an inhabitant and also where "it may be found or transacts business." Conversely, it should follow that if a corporation is not an inhabitant of, is not found in, and does not transact business in, the district, suit may not be so brought.  By statutory grant if suit is brought as prescribed in this section 'all process in such cases may be served in the district of

claimed that its construction of Section 12 of the Clayton Act was the result of a "plain" or "unadorned" reading of the language of the statute, and implied that the Go-Video court's construction was the result of "literal convolutions."  GTE, at 1351.

The Go-Video court did not find the language of Section 12 to be clear or unambiguous.  Go-Video, 885 F.2d at 1412 (quoting Judge Stewart's linguistic analysis of the syntactic structure of Section 12 in Gen. Elec. Co. v. Bucyrus-Erie Co., 550 F. Supp. 1037, 1042, 1042 n.7 (S.D.N.Y. 1982), without necessarily endorsing his analysis).[8]  Instead of

---

> which it (the corporation) is an inhabitant, or wherever it may be found."  Thus, 'in such cases,' Congress has seen fit to enlarge the limits of the otherwise restricted territorial areas of process.  In other words, the extraterritorial service privilege is given only when the other requirements are satisfied.

Goldlawr, 288 F.2d at 581.

[8] Judge Stewart wrote that "the usual rules of syntax" would favor the construction of Section 12 that the service of process clause is independent of the venue clause:

> The word "such" means "the aforementioned," Webster's Third International Dictionary (unabr. ed. 1963).  Thus, when "such" precedes a noun it is assumed to refer to a particular antecedent noun and any dependent adjective or adjectival clauses modifying that noun, but not to any other part of the preceding clause or

relying on its own way of reading of the language of Section 12, as the GTE court did, the Go-Video court found it necessary to "interpret a passage in which antecedents and consequents are unclear by reference to the context and purpose of the statute as a whole." Id. The Go-Video court did not find the sparse legislative history of the Clayton Act conclusive on the issue. 885 F.2d at 1410. There was evidence, however, that "Congress viewed the questions of venue and service of process separately, with the latter issue of subsidiary importance." Id.

The Go-Video court found it more helpful to rely on the general interpretation that courts have given Section 12. Id. "[C]ourts have viewed the section's main contribution to be its expansion of the bounds of venue." Id. (citing United States v. Scophony Corp. of Am., 333 U.S. 795, 806-808 (1948) ( Section 12 substituted broad, practically-founded venue tests for the older, "hair-splitting legal technicalities" of the Sherman Act); 15 Wright & Miller, Federal Practice and Procedure, § 3818, at 109-10 (1976) (venue provisions of Clayton Act were "clearly broadening in [their] effect")).[9] See also Paper

Systems, Inc. v. Mitsubishi Corp., 967 F. Supp. 364, 368 (E.D. Wis. 1997) ("In the case of the antitrust laws, it makes no sense to tie a district court's jurisdiction to the state in which it sits; it neither promotes the enforcement of the antitrust laws nor the management of litigation."); Prof'l Adjusting Systems of America, Inc. v. Gen. Adjustment Bureau, Inc., 352 F. Supp. 648, 651 (E.D. Pa. 1972) ("The reason for the broad scope of the Clayton Act venue provisions was to give plaintiff the widest possible selection of venue for his benefit, to promote a 'private attorney general' type policy for exposing and policing combinations in restraint of trade."). In light of the above authority and comment, the Go-Video court found itself "reluctant to adopt a construction of section 12 which would, by limiting the availability of the valued tool of worldwide service of process, recast its venue provision as a restrictive, rather than a broadening, provision and might prevent plaintiffs from pursuing

---

sentence. Applying this rule to section 12, "in such cases" would refer to "any suit, action, or proceeding under the antitrust laws against a corporation," and not to anything else in section 12's first clause.

Bucyrus-Erie, 550 F. Supp. at 1042 n.7.
[9] As the Supreme Court noted in United States v. Scophony Corp., 333 U. S. 795, 808 (1948), the third and final prong of "transact[ing] business" in Section 12

was enacted by Congress with the remedial purpose of enlarging the venue jurisdiction of the federal courts by substituting "practical, business conceptions for the previous hairsplitting legal technicalities encrusted on the 'found'-'present'-'carrying-on-business' sequence. . . ." Id. The Court noted that the Congressional enactment "relieve[s] persons injured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business residence. A foreign corporation no longer could come to a district, perpetuate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due." Id.

8

legitimate claims under the antitrust laws." 885 F.2d at 1410-11.

The Go-Video court also relied on the Supreme Court's case law regarding the relationship between federal venue statutes of general application and specific venue provisions contained in individual statutes to support its holding that the provision for worldwide service of process is independent of the specific venue provision in Section 12 of the Clayton Act. "[A]s a general matter, courts have interpreted special venue provisions to supplement, rather than preempt, general venue statutes." Id. at 1409 (citing 15 Wright & Miller, supra, at 108-109) ("Supreme Court has held that special venue statutes are supplemented by, and are to be read in light of, liberalizing provisions of the general venue statutes") (citing Pure Oil v. Suarez, 384 U.S. 202 (1966)).

Of particular relevance to the Go-Video court was the Supreme Court's discussion of the relationship between the Alien Venue Statute, 28 U.S.C. § 1391(d), a venue provision of general applicability, and the specific venue provision, 28 U.S.C. § 1400(b), concerning actions for patent infringement, in Brunette Mach. Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706 (1972). The Supreme Court held that the specific venue provision did not bar the suit under which venue had been satisfied under Section 1391(d), the Alien Venue Statute, even though the Court had previously held that the same patent venue statute did preclude the application of the general corporate venue provision of § 1391(c). Brunette, at 713-14 (distinguishing Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222 (1957)).

Section 1391(d) is not like other general venue provisions. Brunette held that "Section 1391(d) is not derived from the general venue statutes that [a special venue provision might otherwise be read as] intended to replace." Id. at 713. Rather, Section 1391(d) derives from a tradition going "back to the beginning of the Republic" under which "suits against aliens were left unrestricted, and could be tried in any district, subject only to the requirement of service of process." Id. at 708. "The Brunette court interpreted § 1391(d) to state 'a principle of broad and overriding application' which prevented an alien defendant from using a narrower venue provision in another statute as a 'shield against suit.'" Go-Video,885 F.2d at 1409-10 (citing Brunette, at 714). "Absent some express congressional intent to the contrary, a special venue provision should not, under the clear language of Brunette be deemed exclusively controlling when the defendant involved is an alien. The principle that an alien may be sued in any district is simply too deeply rooted to assume otherwise." Bucyrus-Erie, 550 F. Supp. at 1040 (citing Brunette, at 714); see also Go-Video, at 1410.

The approach of the Go-Video and Bucyrus-Erie courts is convincing and well reasoned in their construction of Section 12 of the Clayton Act.[10] We,

_____

[10] We are not persuaded by the conclusions drawn by the GTE and Goldlawr courts for the reasons discussed by the Go-Video and Bucyrus-Erie courts. First, because we do not find the language of Section 12 to be clear and unambiguous, we are not persuaded by the "plain" or "unadorned" reading of the statutory language by the GTE court. We, therefore, believe that it is necessary to consider the overall

purpose of the statute in construing the statutory language. Second, we agree with the analysis made in several District Courts' decisions that the conclusions of GTE and Goldlawr are not persuasive because the defendant corporations in those two cases were not alien corporations and were, instead, out-of-state corporations. The distinction is crucial. "The general venue provision of [28 U.S.C. § 1391(c)] governing such domestic corporations is, in contrast to [§ 1391(d)] governing alien corporations, more difficult to satisfy than the [S]ection 12 venue requirements." Bucyrus-Erie, 550 F. Supp. at 1041 (first two emphases added, the last emphasis in original). That is because the added prong of "transacting business" in Section 12 is easier to satisfy than the traditional prongs of being an "inhabitant" or "doing business." Id. at 1041 n.5 ("'doing business' . . . requires greater contacts then does 'transacting business'"). Because Goldlawr did not involve an alien corporation, the Goldlawr court, not surprisingly, did not need to consider the impact of the general venue provision of § 1391(d). As the Go-Video court observed, the Goldlawr court's conclusion is unpersuasive regarding the relationship of venue and jurisdiction under Section 12 for two reasons. "First, [Goldlawr's conclusion in this regard] is dictum, unrelated to the actual holdings of the case. Second, and more important, Goldlawr was decided before the Supreme Court's decisions in Pure Oil and Brunette, decisions in which the Supreme Court clarified the relationship between specific statutory venue provisions and the general federal venue statutes [for alien corporations]. . . ." Go-Video, 885 F.2d at 1411. For the same reasons, the GTE holding, which

therefore, hold that the service of process provision on foreign corporations is independent of, and does not require satisfaction of, the specific venue provision under Section 12 of the Clayton Act.

### B.

We also reject the appellants' argument that the District Court does not have personal jurisdiction over them because they do not have contacts with the State of Pennsylvania. In this instance, Pennsylvania is the forum state because the underlying class actions have been transferred and consolidated for pretrial purposes.[11] At least two sister Courts of Appeals have held that when

---

involved only out-of-state domestic corporations, is unpersuasive.

[11] Underlying the appellants' argument for the local contacts analysis is an assumption that the court's personal jurisdiction is limited to the state to which the class action has been transferred. That assumption is unwarranted. Consolidation of the underlying class action in Pennsylvania is only for pretrial purposes pursuant to 28 U.S.C. § 1407. As correctly concluded by the District Court, the transferee court can exercise personal jurisdiction to the same extent that the transferor court could. See In re Agent Orange Prod. Liability Litig., 818 F.2d 145, 163 (2d Cir. 1987); In re Telectronics Pacing Systems Inc., 953 F. Supp. 909 (S.D. Ohio 1997). Even under the local contacts analysis, personal jurisdiction should be assessed at least based on the appellants' contacts with the five states where the individual actions were brought, New Jersey, Ohio, Delaware, Kentucky, and Pennsylvania.

personal jurisdiction is invoked under the Clayton Act, jurisdiction is based on the defendants' contacts with the United States as a whole. Access Telecom, Inc. v. MCI Telecomm. Corp., 197 F.3d 694, 718 (5th Cir. 1999), cert. denied, 531 U.S. 917 (2000) ("When jurisdiction is invoked under the Clayton Act, the court examines the defendant's contacts with the United States as a whole to determine whether the requirements of due process have been met.") (citing Go-Video); Go-Video, 885 F.2d at 1415 (affirming the District Court's holding that "worldwide service provision of § 12 justifies its conclusion that personal jurisdiction may be established in any district, given the existence of sufficient national contacts").

We find support for our construction of Section 12 of the Clayton Act in the courts' construction of Section 27 of the Securities Exchange Act of 1934. This section, modeled after Section 12 of the Clayton Act, provides in relevant part:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa (emphasis added). The two sections are remarkably similar in their provisions for venue and service of process.[12]

In the context of construing Section 27, this Court has held broadly that "a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 369 (3d Cir. 2002). Then Chief Judge Becker wrote in Pinker:

> Where Congress has spoken by authorizing nationwide service of process, . . . as it has in the Securities Act, the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits. See DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981). Following this reasoning, the district courts within this Circuit have repeatedly held that a "national contacts analysis" is appropriate "when appraising personal jurisdiction in a case arising under a federal statute that contains a nationwide service of process provision."

---

[12] See, e.g., Go Video, 855 F.2d at 1414; Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1340 n.10 (2d Cir. 1972); Bucyrus-Erie, 550 F. Supp. at 1043. Construing Section 27 of the Securities Exchange Act, Judge Friendly, writing for the court, concluded that the phrase "in such cases" in that statute is independent of the venue provision and "speaks expressly only to service of process." Leasco, at 1340 (citing United States v. Scophony Corp., 333 U.S. 795 (1948)).

11

AlliedSignal, Inc. v. Blue Cross of Calif., 924 F. Supp. 34, 36 (D.N.J. 1996); see also Green v. William Mason & Co., 996 F. Supp. 394, 396 (D.N.J.1998) ("[A]n assessment of personal jurisdiction under [a statutory provision authorizing nationwide service of process] necessitates an inquiry into the defendant's contacts with the national forum."). We too are persuaded by the reasoning of our prior opinions on the subject, and, consistent with several of our sister courts of appeals, hold that a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process.

Pinker, at 369-70 (emphasis in original).[13] See also Dardana Ltd. v.

A.O. Yuganskneftegaz, 317 F.3d 202, 207 (2d Cir. 2003) (when personal jurisdiction over a foreign corporation is based in essence on the federal long-arm statute, due process analysis involves contacts with the United States as a whole); United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 36 (1st Cir. 1999) (same); Fitzsimmons v. Barton, 589 F.2d 330, 333 n.4 (7th Cir. 1979); Mariash v. Morrill, 496 F.2d 1138, 1142-43 (2d Cir. 1974) (service of process under § 27 of Securities Exchange Act requires examination of defendant's contacts with the United States as a whole).

We agree with the holdings of our foregoing sister Courts of Appeals and the rationale of our decision in Pinker that have construed the similarly worded Section 27 of the Securities Exchange Act. We hold that personal jurisdiction in federal antitrust litigation is assessed on the basis of a defendant's aggregate contacts with the United States as a whole. Our holding in Pinker and on this appeal is consistent with the Federal Rule of Civil Procedure 4(k)(2).[14] Personal

---

[13] Pinker, 292 F.3d at 369-70 (citing Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 946-47 (11th Cir. 1997); Busch v. Buchman, Buchman & O'Brien Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994); United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1330 (6th Cir. 1993); United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992); Sec. Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1316 (9th Cir. 1985), rev'd on other grounds, Holmes v. Sec. Investor Protection Corp., 503 U.S. 258 (1992); Autoscribe Corp. v. Goldman & Steinberg, Inc., 1995 WL 56662, at *3 (4th Cir. Feb. 3, 1995) (per curiam) (not precedential) (citing Hogue v. Milodon Engineering, Inc., 736 F.2d 989, 991 (4th Cir. 1984)).

---

[14] Federal Rule of Civil Procedure 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

12

jurisdiction therein is not limited to the defendant's contacts with a particular federal judicial district or the forum state. We hold further that personal jurisdiction under Section 12 of the Clayton Act is as broad as the limits of due process under the Fifth Amendment. See Go-Video, 885 F.2d at 1415 ("Under the due process component of the Fifth Amendment, a court must consider whether the maintenance of the suit (i.e. the exercise of personal jurisdiction over the defendants to the suit) offends traditional notions of fair play and substantial justice.") (citing Omni Capital Int'l v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 102-103 (1987); Int'l Shoe Corp. v. Washington, 326 U.S. 310, 316 (1945)).[15]

---

"Under this provision, a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United States as a whole, when the defendant is not subject to personal jurisdiction in any state. Rule 4(k)(2) confers personal jurisdiction over a defendant so long as the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment." Dardana, 317 F.3d at 207 (citing 4 Wright & Miller, Federal Practice and Procedure § 1068.1, at 612, 616 (2002); Chew v. Dietrich, 143 F.3d 24, 27-28 (2d Cir.), cert. denied, 525 U.S. 948 (1998)).

[15] We note, as did the Go-Video court, that the Supreme Court has on two occasions explicitly declined to decide the constitutionality of national contacts analysis. See 885 F.2d at 1414 n.8 (citing Omni Capital Int'l v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 102-103 n.5 (1987); Asahi Metal Indus. v. Superior Court, 480 U.S. 102, 113 n.* (1987) (plurality opinion)).

## III.

The second issue certified in this appeal is whether we should adopt a first resort rule in favor of the procedures under the Hague Convention, rather than the Federal Rules of Civil Procedure, for jurisdictional discovery from foreign defendants in foreign signatory "host" nations. The appellants argue that jurisdictional discovery in Germany, a Convention signatory nation, should first proceed under the Convention procedures, rather than the Federal Rules. The Convention prescribes certain procedures by which a judicial authority in one contracting nation may request evidence located in another nation. Our Supreme Court rejected a first resort rule in favor of the Convention in a case where personal jurisdiction was not contested and the discovery sought involved only the merits of the case. Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of Iowa, 482 U.S. 522 (1987). The appellants argue specifically that we should carve out a narrow exception to the Aerospatiale decision where, as here, personal jurisdiction has yet to be established and the discovery sought is limited to proof of jurisdiction.[16]

### A.

---

[16] The Federal Republic of Germany and the Federation of German Industries have submitted briefs as amicus curiae in support of the appellants' position for this second issue on appeal, urging reversal of the District Court. The brief of amicus curiae submitted by the Committee to Support the Antitrust Laws supports the plaintiffs' position, urging affirmation of the District Court.

_Aerospatiale_ holds that the Hague Convention does not provide exclusive procedures for obtaining documents and information located in a foreign signatory nation's territory. _Aerospatiale_ first rejects a rule of exclusive use or a rule of first use as a matter of law in favor of the Convention on the ground that neither the language nor the negotiating history of the Convention support such rules. _Aerospatiale_, 482 U.S. at 533-36. Specifically, _Aerospatiale_ holds that the Convention's plain language, as well as the history of its proposal and ratification by the United States, unambiguously supports the conclusion that it was "intended as a _permissive supplement_, not a preemptive replacement, for other means of obtaining evidence located abroad." _Id._ at 536 (emphasis added). The Convention's preamble speaks in non-mandatory terms, specifying its purpose to "facilitate" discovery and to "improve mutual judicial co-operation." _Id._ at 534. Similarly, its text uses permissive language, and does not expressly modify the law of contracting states or require them to use the specified procedures or change their own procedures. _Id._ Accordingly, the Convention does not deprive the District Court of its jurisdiction to order, under the Federal Rules of Civil Procedure, a foreign national party to the proceeding to produce evidence physically located within its territory. _Id._ at 539-40.

_Aerospatiale_ rejects next a rule of first resort favoring the Convention on grounds of international comity and respect for the "judicial sovereignty" of the signatory nation in which evidence sought is located. _Id._ at 542-43. International comity does not require in all instances that American litigants first resort to the Convention procedures before initiating discovery pursuant to our Federal Rules. _Id._ at 542-44. The concept of comity requires in this context "a more particularized analysis" of the respective interests of the foreign host nation and the requesting nation than a blanket first resort rule would generate. _Id._ at 543-44. _Aerospatiale_ notes that in many situations, the Convention procedures would be unduly time-consuming and expensive, and less likely to produce needed evidence than direct use of the Federal Rules. _Id._ at 542-43. However, the Convention's procedures, although not mandatory, are available whenever they will facilitate the gathering of evidence, and apply in the sense that they are one method of seeking evidence that a court may elect. _Id._ at 541. _Aerospatiale_ declines to hold "as a blanket matter that comity requires resort to Hague evidence convention procedure." _Id._ at 544. Therefore, the determination of whether to resort to the Convention requires "prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that such resort will prove effective." _Id._ (establishing the three-prong test for determining whether to resort to the Convention).

_Aerospatiale_ acknowledges that "both the discovery rules set forth in the Federal Rules of Civil Procedure and the Hague Convention are the law of the United States." _Id._ at 533. However, the Federal Rules are "the normal methods" for federal litigation involving foreign national parties unless the "optional" or "supplemental" Convention procedures prove to be conducive to discovery under some circumstances. _Id._ at 536 ("the Convention was intended as a _permissive supplement_, not a pre-emptive replacement, for other means of obtaining evidence located abroad") (emphasis added), 538 (both the text and negotiating history of the Convention

14

show that "it was intended to establish optional procedures that would facilitate the taking of evidence abroad") (emphasis added), 541 ("the optional Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention") (emphasis added), 542 ("the normal methods of the Federal Rules of Civil Procedure") (emphasis added).

Notwithstanding its rejection of the first resort rule, Aerospatiale instructs the American courts to "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." Id. at 546. "Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." Id.

Aerospatiale has not explicitly addressed, however, the issue of which party bears the burden of convincing the court of an "optional" and "supplemental" use of the Convention procedures in a particular case. Nor has Aerospatiale, involving foreign defendants over whom the trial court had undisputed personal jurisdiction, addressed the issue of what procedures to follow in a case, as here, where jurisdiction is contested and discovery sought is limited only to proof of jurisdiction.

B.

The appellants argue that the District Court erred in extending the

Aerospatiale holding to the underlying litigation where they have contested jurisdiction and the discovery sought is limited to proof of jurisdiction. The appellants seek our review of only the District Court's legal conclusion that the Aerospatiale holding applies equally to jurisdictional discovery. This certified issue involves a pure question of law, subject to our plenary and de novo review.

Specifically, the appellants argue that Aerospatiale is not applicable to jurisdictional discovery and that this Court should adopt a first resort rule in favor of the Hague Convention procedures based on considerations of international comity and respect for the German sovereignty, the host signatory nation where discovery is to be conducted. They argue that the Aerospatiale balancing approach is premised expressly on the existence of personal jurisdiction in that case. Where jurisdiction is disputed and not yet established, they assert the balancing approach must yield to a rule of first resort.

The appellants stress the split of authorities among federal district courts and state courts regarding the extension of Aerospatiale to jurisdictional discovery. They cite for support Geo-Culture, Inc. v. Siam Inv. Mgmt. S.A., 936 P.2d 1063, 1067 (Or. Ct. App. 1997) (requiring plaintiff to conduct jurisdictional discovery, at least initially, only through the Hague Convention, noting that plaintiff had failed to allege a prima facie basis for asserting jurisdiction over the defendant); Jenco v. Martech Int'l, Inc., No. Civ. A. 86-4229, 1988 WL 54733 at *1 (E.D. La. May 19, 1988) (holding, with almost no meaningful analysis, that certain jurisdictional discovery requests must be

15

made under the Hague Convention because "[w]hile judicial economy may dictate that the Federal Rules of Civil Procedure should be used, the interests of protecting a foreign litigant in light of the jurisdictional problems are paramount")[17]; and Knight v. Ford Motor Co., 615 A.2d 297, 301 n.11 (N.J. Super. Ct. Law Div. 1992) (noting, in dicta, that "[i]f jurisdiction does not exist over a foreign party . . . the Convention may provide the only recourse for obtaining evidence").

The appellants rely also on a report by the Special Commission of the Hague Conference attended, among others, by delegations from the United States and Germany. See Hague Conference on Private International Law: Special Commission Report on the Operation of the Hague Service Convention and the Hague Evidence Convention, April 1989, reprinted in 28 Int'l Law Materials 1556 (1989). The report stated that while views varied as to whether the Hague Convention "occupied the field and therefore excluded application of domestic procedural rules," "the Commission thought that in all Contracting States, whatever their views as to its exclusive application, priority should be given to the procedures offered by the Convention when evidence located abroad is being sought." Id. at 1564, 1569. The appellants argue that the statement in the report that "priority" should be given to

the Convention should be entitled to substantial deference.

The appellants are correct that Aerospatiale makes numerous references to the existence of personal jurisdiction in that case. We disagree, however, that the Aerospatiale holding is dependent on personal jurisdiction. As concluded by the District Court here and the District Court for the District of Columbia, which considered the same argument raised by the same defendant, BASF AG, in In re Vitamins Antitrust Litig., 120 F. Supp. 2d 45, 49 (D.D.C. 2000), a trial court has authority to determine its jurisdiction. See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982) ("By submitting to the jurisdiction of the Court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction"). Because the District Court has jurisdiction over these foreign defendants to the extent necessary to determine whether they are subject to personal jurisdiction, we see no legal barrier to exercising the discretion given to trial courts by Aerospatiale in cases of jurisdictional discovery. See In re Vitamins, at 49.

We agree with the majority of trial courts' decisions that there should be no exception to the Aerospatiale holding for jurisdictional discovery. See In re Vitamins, at 49; Rich v. KIS California, Inc., 121 F.R.D. 254, 260 (M.D.N.C. 1988) (Aerospatiale "did not carve out any exception for disputes involving personal jurisdiction"); Fishel v. BASF Group, 175 F.R.D. 525, 529 (S.D. Iowa 1997) (Aerospatiale provides that the Hague Convention procedures are optional and do not divest federal district courts of authority to order discovery under the Federal Rules); In re Bedford

---

[17] Jenco left undisturbed a portion of the magistrate's opinion allowing interrogatories and document requests directed at a foreign party to proceed under the Federal Rules and overturned only the magistrate's ruling allowing depositions to be taken under the Federal Rules.

Computer Corp., 114 B.R. 2, 5-6 (Bankr. D.N.H. 1990) (citing Rich and allowing discovery limited to jurisdictional issues to proceed under the Federal Rules).

Unlike Geo-Culture, relied on by the appellants, where the plaintiff failed to allege even a prima facie case of personal jurisdiction, the District Court found that the plaintiffs here had established a prima facie case of personal jurisdiction, a conclusion not challenged by the appellants. The plaintiffs' allegations amounted, therefore, to more than "mere blanket fishing expeditions" and were "not the type of bare-boned allegations that potentially could lead to the fishing expeditions of obvious concern to the signatory countries." In re Vitamins, 120 F. Supp. 2d at 50.

The appellants also relied on the Federal Rules to challenge the District Court's personal jurisdiction. As we have stated above, it is well established that the trial court has inherent power and jurisdiction to decide whether it has jurisdiction. Ins. Corp. of Ireland, 456 U.S. at 706. The appellants' arguments are also premised on the assumption that there is no personal jurisdiction in this case. Such an assumption is premature and unwarranted unless the result of the pending jurisdictional discovery shows otherwise. At this stage, where the appellants have voluntarily appeared in the court to challenge jurisdiction and jurisdictional discovery is pending, the District Court indisputably has jurisdiction to determine whether there is personal jurisdiction upon completion of jurisdictional discovery. Moreover, the denial of resort to Hague convention procedures for jurisdictional discovery is not unfair to the appellants because they "[had] taken advantage of the [Federal] [R]ule allowing them a preliminary hearing and determination of the issues raised in their motion." See Fishel, 175 F.R.D. at 529.

Accordingly, the distinction drawn by the appellants between "merits" discovery and "jurisdictional" discovery, predicated on a false dichotomy of having and not having jurisdiction, amounts to no real difference because the court has jurisdiction for either type of discovery.[18] The undisputed presence of personal jurisdiction in Aerospatiale is, therefore, tangential to its holding and irrelevant to the issue of whether Aerospatiale applies also to jurisdictional discovery.

There are other reasons supporting our conclusion that the Aerospatiale balancing approach applies equally to the determination of whether the Hague Convention procedures should be used initially for jurisdictional discovery. First, where Aerospatiale has categorically rejected a first resort rule for "merits" discovery, which we can expect to be more comprehensive or burdensome than jurisdictional discovery, there is more justification to reject a first resort rule for the more limited and less intrusive jurisdictional discovery. See Fishel, 175 F.R.D. at 529 ("The ascertainment of facts bearing on personal jurisdiction normally involves the least intrusive type of inquiries.").

Second, where Aerospatiale has rejected the first resort rule even though the French defendants there may have

---

[18] No one would dispute that if jurisdiction discovery yields no evidence sufficient to establish personal jurisdiction, the court must dismiss the underlying action against the appellants, rather than deciding which set of procedural rules to apply.

faced possible penal sanction under France's "blocking statute," there is less justification for us to adopt a first resort rule where the appellants here face no such sanction because Germany has no "blocking statute."[19] Aerospatiale reiterates the well-settled view that "[blocking] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." 482 U.S. at 544-45 n.29 (concluding that "the enactment of such a statute by a foreign nation" cannot be allowed to "graft a rule of first resort onto the Hague Convention, or otherwise to provide the nationals of such a country with a preferred status in our courts"). Neither the appellants nor their supporters, Germany or the Federation of German Industries, have disputed the plaintiffs' statement that Germany, unlike France, does not have a "blocking statute," criminal or civil, that specifically prohibits production of documents in connection with foreign judicial or administrative proceedings. Nor have they identified a single instance where a German national has been prosecuted, penalized, or sanctioned under German law for complying with discovery orders from a United States judicial or administrative proceeding pursuant to the Federal Rules.

Third, where Aerospatiale has rejected the adoption of a blanket first resort rule based on the proffered reasons of respecting the "judicial sovereignty" of the signatory host nation and preventing discovery abuse, the same reasons proffered by the appellants here must fail as well. 482 U.S. at 543-44 (finding no textual support in the Hague Convention for a first resort rule and opting for a three-prong balancing approach), 545-46 (suggesting that burdensome or intrusive discovery practice is not a sufficient ground for adopting the first resort rule because the trial court has an inherent duty to supervise discovery and prevent discovery abuse).

The appellants and their supporters argue generally that Germany is a civil law country where the gathering of evidence is a judicial function and that pursuing discovery without resort to the Convention may be deemed an affront to Germany's sovereignty. The Aerospatiale Court, as well as other courts, has found such argument "unpersuasive." Id. at 543; see also Great Lakes Dredge & Dock Co. v. Harnischfeger Corp., 1990 WL 147066, at *2 (N.D. Ill. Sept. 25, 1990); Scarminach v. Goldwell GmbH, 531 N.Y.S. 2d 188, 191 (N.Y. Sup. Ct. 1988). As observed by the court in In re Vitamins, 120 F. Supp. 2d at 50, there is no reason to assume that discovery under the Federal Rules would inevitably offend Germany's sovereign interest because presumably Germany, like the United States, would prohibit the alleged price-fixing conspiracy and would welcome investigation of such antitrust violation to the fullest extent. See

---

[19] Aerospatiale, 482 U.S. at 526 n.6 (quoting Article 1A of the French "blocking statute," French Penal Code Law No. 80-538) ("Subject to treaties or international agreements and applicable laws and regulations, it is prohibited for any party to request, seek or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith.").

Germany's Act Against Restraints of Competition § 1; Treaty Establishing the European Economic Community, Art. 81(1). There is also no reason to "believe that the sovereign interests of . . . foreign signatory nations would be any more offended by [the] narrower jurisdictional discovery than they would be by the broader, merits-related discovery allowed by Aerospatiale." In re Vitamins, 120 F. Supp. 2d at 51. We likewise conclude that the appellants' general argument is unpersuasive.[20]

Similarly, following the Aerospatiale holding, we also find unpersuasive the appellants' argument that a first resort to the Hague Convention is required to avoid possible burdensome or intrusive discovery practice under United States law. Aerospatiale, 482 U.S. at 545-46; see also Great Lakes, 1990 WL 147066, at *2, and Scarminach, 531 N.Y.S. 2d at 191. Discovery abuse is an insufficient reason to avoid the Federal Rules because the appellants have remedies in

the District Court to restrict discovery abuse. We expect that the District Court will follow Aerospatiale's instruction and "exercise special vigilance" to protect appellants from unduly burdensome or abusive discovery. Aerospatiale, at 546.

We agree with the District Court's legal conclusion that the Aerospatiale balancing test applies equally to jurisdictional discovery and that there is no first resort rule in favor of the Hague Convention procedures for jurisdictional discovery.

C.

The appellants also argue alternatively that even if the Aerospatiale balancing approach applies to jurisdictional discovery, the three-prong test would favor first use of the Convention procedures in this case. The District Court rejected that argument, ruling that the appellants bore the burden of persuasion under the balancing test and that they failed to satisfy the burden. The court concluded alternatively that even if the plaintiffs bore the burden of persuasion, they had submitted adequate evidence to show that the balancing test disfavored first use of the Convention procedures for jurisdictional discovery in this case.

We agree first with the District Court's conclusion of law that the appellants bear the burden of persuasion as to the optional use of the Convention procedures. See Aerospatiale, 482 U.S. at 547 (stating that the court should give "the foreign litigant a full and fair opportunity to demonstrate appropriate reasons for employing Convention procedures in the first instance, for some aspects of the discovery process") (emphasis added). This language seems

---

[20] Appellants and especially their supporters, Germany and the Federation of German Industries, stress the controversial character of the "narrow majority" decision in Aerospatiale and profess their strong disagreement with the Aerospatiale holding that the Hague Convention procedures are merely an optional supplement to the Federal Rules. We must reject their invitation to deviate from Aerospatiale based on the same proffered reasons, found insufficient by the Aerospatiale Court, of respecting international comity and preventing discovery abuse. As a subordinate court, we are bound by the Supreme Court's precedent.

19

to imply that the proposing party bears the burden of persuasion. See also In re Vitamins, 120 F. Supp. 2d at 51-52 (holding that proposing party bears the burden);Valois of Am., Inc. v. Risdon Corp., 183 F.R.D. 344, 346 (D. Conn. 1997) (same); Doster v. Schenk A.G., 141 F.R.D. 50, 51-52 (M.D.N.C. 1991) ("[I]t is more practical, if not logical, to place the burden of persuasion on the proponent of using the Hague Convention."); Rich, 121 F.R.D. at 257-58 (same); Benton Graphics v. Uddeholm Corp., 118 F.R.D. 386, 389 (D.N.J. 1987) (same); but see Hudson v. Hermann Pfauter GmbH & Co., 117 F.R.D. 33, 38 (N.D.N.Y. 1987); Knight, 615 A.2d at 300.

We also agree with the District Court's conclusions that the appellants have failed to satisfy their burden of persuasion under the Aerospatiale balancing test and that the evidence on record disfavors the first use of the Convention procedures for jurisdictional discovery. The court's conclusions in these two instances are reviewed only for abuse of discretion, and we find none.

IV.

For the foregoing reasons, the orders of the District Court certified for review on this interlocutory appeal will be affirmed. Costs are taxed against the appellants.

ROTH, Circuit Judge, concurring[21]:

I write separately to express my concern that the Hague Convention has been given short shrift since the Supreme Court's decision in Société Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522 (1987). The service provisions of the Hague Convention were adopted by the President and approved by a unanimous vote of the Senate in 1972. Id. at 530. The provisions then became the "law of the land," coexisting with other federal law such as the Federal Rules of Civil Procedure. U.S. Const. art. VI, cl. 2. In Aerospatiale, the Hague Convention was referred to as a "permissive supplement" and an "optional procedure." Id. at 536. However the Hague Convention is only as "optional" as deciding to use the Federal Rules is "optional" in such a case. The Convention does not overwrite the Federal Rules of Civil Procedure, but it is in no way inferior to them.

Unfortunately, I believe the language used in Aerospatiale has unintentionally compounded the problem inherent with the Convention: that "relatively few judges are experienced in the area [of international law] and the procedures of foreign legal systems are often poorly understood." Aerospatiale, 482 US. at 552 (Blackmun, J., dissenting). Many times, rather than wade through the mire of a complex set of foreign statutes and case law, judges marginalize the Convention as an unnecessary "option." I believe the Aerospatiale decision should be reexamined to ensure that lower courts are in fact exercising "special vigilance to protect foreign litigants" and demonstrating respect "for any sovereign interest expressed by the foreign state." Id. at 485. Currently, I fear that many courts are simply discarding the treaty as an unnecessary hassle.

Our sage colleague, Judge Joseph F. Weis, Jr., has opined that first resort to the Hague Convention is in fact appropriate:

---

[21]Judge McKee shares the concerns expressed herein and joins this concurring opinion.

The arguments mustered against giving priority to Convention procedures are not persuasive when balanced with the overriding interests, national and international, in more effective implementation of the Evidence Convention. It should be remembered, after all, that the treaty negotiated by the United States and the other signatories is for the benefit of private litigants as a whole – some inconvenience or expense to an individual litigant should not suffice to jeopardize an arrangement which benefits many. Moreover, through ratification, the United States has agreed to honor the commitments which the treaty contains. The judiciary should not lightly permit a private litigant to undermine express national policy.

Joseph F. Weis, Jr., <u>The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity</u>, 50 U. Pitt. L. Rev. 903, 931 (Spring, 1989).

Judge Weis's view mirrors the conclusions of the Special Commission of the Hague Conference of April 1989, that, whatever the views of the delegates as to application of domestic procedural rules, "priority should be given to the procedures offered by the Convention when evidence located abroad is being sought." Hague Conference of Private International Law: Special Commission Report on the Operation of the Hague Service Convention and the Hague Evidence Convention, April 1989, <u>reprinted in</u> 28 Int'l Law Materials 1556, 1569 (1989). Among the delegates at the 1989 meeting of the Special Commission was one from the United States.

I recognize that we are bound by <u>Aerospatiale</u> but I believe that it is time for the Supreme Court to revisit that decision – particularly because I perceive that many of our courts have not exercised the "special vigilance to protect foreign litigants" that the Supreme Court anticipated.

Finally, under the precedent of <u>Aerospatiale</u>, I do not oppose the panel's conclusion that the burden of persuasion lies with the party advocating the use of the Hague Convention. In an ideal world, however, if the treaty were to be given the priority to which its status as a ratified treaty entitles it, I do not believe that the burden of persuasion should lie with the proponent of the Hague Convention procedures.